James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716) ⁻
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
email: jfinberg@lchb.com
email: kdermody@lchb.com
email: hwong@lchb.com

Elizabeth A. Alexander
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue, North, Suite 1650
Nashville, TN 37219-2423
Telephone: (615) 313-9000
Facsimile: (615) 313-9965
email: ealexander@lchb.com

Adam T. Klein
Piper Hoffman
Justin M. Swartz
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
email: atk@outtengolden.com
email: ph@outtengolden.com
email: jms@outtengolden.com

*Attorneys for the Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| DAISY JAFFE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY DW, INC.,<br><br>Defendant. | Case No. _____ 3903<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e et seq. AND THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, CAL. GOV'T CODE §§ 12940 et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

545596. 1

CLASS ACTION COMPLAINT

Individual and Representative Plaintiff Daisy Jaffe ("Plaintiff") on behalf of herself and all others similarly situated, alleges, upon personal knowledge as to herself and upon information and belief as to other matters, as follows:

## NATURE OF THE CLAIM

1.      Defendant Morgan Stanley DW, Inc. (hereinafter "MSDW" or "the Company") is a retail financial services firm that discriminates against female Financial Advisors on the basis of gender with respect to business opportunities, compensation, and other terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12940 *et seq.*

2.      The violations are systemic, constituting a pattern and practice that pervades the corporate culture of MSDW. They are not isolated or exceptional incidents, but rather the regular and predictable result of Defendant's policies and practices. Put simply, MSDW's policies and practices with regard to the distribution of the business opportunities and investment accounts under its control have the effect, and have been undertaken with the purpose, of denying equal opportunities for compensation to qualified female Financial Advisors.

3.      MSDW generally pays its Financial Advisors (also called "FAs" or "brokers") on a commission basis—a percentage of the revenue generated by the investment accounts assigned to the FA.

4.      FAs acquire investment accounts through "leads" and "referrals" (e.g., when a Financial Advisor is told of a potential client, the FA contacts the potential client, and the FA enrolls the potential client as a MSDW customer); by transfers from one Financial Advisor to another (e.g., when another FA moves to another brokerage firm, retires or leaves the business); through partnerships with other Financial Advisors, and through "walk-ins" and "call-ins" (e.g., when a potential client calls or walks into the branch and inquires about opening an account).

5.      MSDW has implemented company-wide policies and practices for the distribution of accounts, leads, referrals, partnership opportunities, walk-ins, call-ins, and other

business opportunities that delegate substantial discretion to MSDW's virtually all-male Branch Managers. MSDW Branch Managers have extraordinary discretion to distribute accounts and business opportunities as they choose, allowing their gender stereotypes and the company-wide culture of gender discrimination to influence their decisions. As a result, it has been MSDW's practice for years to distribute accounts and other business opportunities to male Financial Advisors in numbers disproportionate to those distributed to similarly-situated female Financial Advisors.

6.    Because Financial Advisors obtain so many accounts through this process, rather than on the FAs' own initiative, the distribution of accounts and the allocation of business opportunities are substantial factors affecting the compensation of MSDW Financial Advisors.

7.    These discriminatory policies and practices intentionally and systematically disadvantage female Financial Advisors at MSDW and prevent them from fairly competing for business opportunities and higher compensation.

8.    As troubling as these discriminatory policies and practices are, more disturbing still is the cavalier way in which MSDW treats the subject of gender discrimination against its female Financial Advisors. While MSDW says, "We focus recruiting efforts on women and provide career development programs including internal women's conferences led by senior women executives," these statements of inclusion are illusory in light of MSDW's exclusionary practices.

9.    Accordingly, this class action is brought by a female Financial Advisor on behalf of herself individually and all similarly-situated female Financial Advisors in the United States against whom MSDW has discriminated on the basis of gender. This action seeks to end MSDW's discriminatory policies and/or practices and to make the Plaintiff class whole by requesting the following remedies: injunctive relief to remedy systemic gender discrimination at MSDW; an award of back pay and front pay; and compensatory and punitive damages.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Members

of the Plaintiff class reside in California and throughout the United States. Defendant MSDW is a Delaware corporation, headquartered in New York, and licensed to do business in California. It has branch offices throughout California and this District. Many of the acts complained of occurred in this State and this District and gave rise to the claims alleged.

12.    Assignment to the San Francisco/Oakland Division of this Court is proper because the Plaintiff resides within this Division and many of the acts complained of took place in this Division.

## PARTIES

13.    Plaintiff Daisy Jaffe is a female resident of Hillsboro, California. She was employed as a Financial Advisor in the San Mateo, California office of MSDW from on or about August 1982 until August 11, 2005. During the course of her employment as a Financial Advisor at MSDW, MSDW denied Ms. Jaffe business opportunities on the basis of her gender and age that directly impacted her compensation. MSDW wrongfully terminated Ms. Jaffe because she is female and over the age of 40.

14.    MSDW is a wholly-owned subsidiary of Morgan Stanley.

15.    Morgan Stanley is a global financial firm that provides brokerage and investment banking management services to corporations, governments and individuals around the world. It maintains leading market positions in each of its business segments – Institutional Securities, Retail Brokerage, Asset Management and Discover (Credit Services). Morgan Stanley employs approximately 53,870 employees worldwide. It is a Fortune 500 company doing business in 30 countries and is one of the largest financial institutions in the United States. It recently reported annual revenues of $52.1 billion, a net income of $4.9 billion and assets of $898.5 billion. As of March 17, 2006, Morgan Stanley had a market value of $64.7 billion.

16.    MSDW is the retail broker-dealer subsidiary of Morgan Stanley. MSDW provides comprehensive financial services to clients through a network of approximately 9,500 Financial Advisors with over 530 global locations, including 485 U.S. retail locations. As of November 30, 2005, MSDW had $617 billion in client assets.

545596. 1                              - 3 -                       CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

17.    Plaintiff Jaffe brings this Class Action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of a Class of all female Financial Advisors employed by MSDW in the United States at any time from January 5, 2005 to the present. Plaintiff also brings this Class Action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of a Subclass of all female Financial Advisors employed by MSDW in California at any time from November 1, 2004 to the present. Plaintiff reserves the right to amend the definitions of the Class and Subclass based on discovery or legal developments.

18.    Plaintiff is a member of the Class she seeks to represent.

19.    The members of the Class identified herein are so numerous that joinder of all members is impracticable. As of the filing of this Complaint, MSDW has approximately 9,500 Financial Advisors. Although the precise number of female Financial Advisors is currently unknown, it is far greater than can be feasibly addressed through joinder.

20.    There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether MSDW's policies or practices discriminate against female Financial Advisors; (2) whether MSDW's policies or practices violate Title VII and/or the California Fair Employment and Housing Act; and (3) whether equitable remedies, injunctive relief, compensatory, and punitive damages for the Class are warranted.

21.    The Representative Plaintiff's claims are typical of the claims of the Class.

22.    The Representative Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

23.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because MSDW has acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The Class members are entitled to injunctive relief to end MSDW's common, uniform,

unfair and discriminatory policies and practices.

24.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class members have been damaged and are entitled to recovery as a result of MSDW's common, uniform, unfair, and discriminatory policies and practices.  MSDW has computerized account data, payroll and personnel data that will make calculation of damages for specific Class members relatively simple.  The propriety and amount of punitive damages are based on the conduct of the Defendant, making these issues common to the Class.

### GENERAL POLICIES OR PRACTICES OF DISCRIMINATION

25.     The denials and abridgments of employment opportunities suffered by the Representative Plaintiff are part of a general policy or practice of discrimination on the basis of gender in employment that has existed at MSDW throughout the relevant time period.  These are not isolated examples of employment practices or individual decisions.  On the contrary, these incidents are representative of MSDW's systematic discrimination against female Financial Advisors in favor of male Financial Advisors.

26.     Because virtually all indicia of success, advancement, and achievement at MSDW are based on the total dollar amount of the assets a Financial Advisor manages or on the amount or revenue he or she has produced, the ability to acquire new and lucrative accounts is essential to a Financial Advisor's success in the business.  Promotion at MSDW are also based on gross production, total assets, or both.  For example, officer titles, such as "First Vice President" are awarded when a Financial Advisor reaches at least $500,000 in gross production in the course of a year.

27.     MSDW's nationwide account distribution policies and practices (as well as its policies and practices for distributing other business opportunities) discriminate against women.  They permit excessive subjectivity by Branch Managers in account assignment and the allocation of business opportunities.  This is a uniform practice across MSDW offices.  Thus,

Branch Managers distribute accounts, referrals, leads, call-ins, walk-ins, and other business opportunities to the FAs based on the Branch Managers' biased personal preferences.

28. By entrusting Branch Managers, virtually all of whom are men, with undue discretion in these matters, MSDW maintains a system whereby the Branch Managers apply their own personal preferences and biases in making distribution decisions in a way that systematically disadvantages women and limits their compensation.

29. MSDW has implemented policies or practices that have denied or restricted the availability of business opportunities, compensation, and other favorable employment conditions to qualified female Financial Advisors. Such discriminatory policies or practices include, without limitation:

a. Systematically discriminating against women in allocating accounts and business opportunities that impact their opportunities for increased compensation, including, but not limited to, leads, call-ins, walk-ins, accounts from departing or retiring brokers' books, and other sources of business;

b. Establishing and maintaining arbitrary and subjective policies or systems regarding business allocation and account distribution that have had the effect of denying compensation to qualified women;

c. Relying upon unweighted, subjective, gender-based and/or arbitrary criteria utilized by a nearly all-male managerial workforce in making business allocation decisions that directly impact FAs' compensation;

d. Denying women opportunities to increase their commissions and other earnings;

e. Maintaining a discriminatory and gender-biased corporate culture; and

f. Making employment decisions based on gender stereotypes.

### CLAIMS OF REPRESENTATIVE PLAINTIFF

30. Plaintiff Daisy Jaffe worked as a Financial Advisor from approximately August 1982 to August 11, 2005 in the San Mateo, California office of MSDW. During the

course of her employment, MSDW denied her compensation, business opportunities, titles and other conditions of employment that it made available to similarly-situated male Financial Advisors.

31.    In what MSDW called a "reduction in force," it terminated Ms. Jaffe's employment on August 11, 2005. Morgan Stanley unlawfully terminated Ms. Jaffe because she is a female and is over 40.

32.    Since the beginning of her employment with MSDW, MSDW has denied Ms. Jaffe compensation that it made available to similarly-situated male Financial Advisors. MSDW routinely distributed business opportunities, including accounts from departing and retiring brokers, referrals, leads, call-ins and walk-ins, and potential clients, to male Financial Advisors, rather than to female Financial Advisors. As a result of the inequitable and discriminatory distribution of accounts and account prospects, female Financial Advisors have diminished income potential and diminished actual income as compared to similarly-situated male employees. MSDW has also favored younger Financial Advisors in account distribution and the allocation of business opportunities. For example, in 2005, MSDW distributed almost all the accounts of a retiring Financial Advisor, Frank Donohue, to male Financial Advisors who were younger than Ms. Jaffe and who had no more qualifications than she. Similarly, MSDW distributed almost all the accounts of two other departing Financial Advisors, Phil Tucker and Paul Roach, to younger, male Financial Advisors who were no more qualified than Ms. Jaffe.

33.    During the course of her employment, MSDW also did not allocate any significant walk-in or call-in business to Ms. Jaffe, while it did allocate such business to similarly-situated younger male Financial Advisors. MSDW denied Ms. Jaffe these opportunities due to her gender and age.

34.    MSDW also discriminated against Ms. Jaffe as an individual based on gender by denying her desirable office assignments. At the same time, it provided desirable office assignments to similarly-situated male Financial Advisors. MSDW did not permit Ms. Jaffe to have a desirable upstairs office, where the offices of similarly-situated male broker were located. Similarly, MSDW denied Ms. Jaffe's request to relocate to the Palo Alto office after the

San Mateo office was evacuated in October 2004 due to a flood. MSDW permitted similarly-situated male Financial Advisors to relocate while it forced Ms. Jaffe to work from home. By discriminating against her with respect to these terms and conditions of her employment, MSDW diminished the amount of Ms. Jaffe's compensation.

35.     By denying compensation to Ms. Jaffe that it made available to similarly-situated male Financial Advisors, MSDW has also denied her the ability to reach earnings tiers with prestigious titles and greater income opportunities, which MSDW awarded based on a Financial Advisor's level of compensation.

36.     MSDW terminated Ms. Jaffe's employment due to the fact that she is female and over the age of 40. At the time she was terminated, she held the title of First Vice President. This title was a title given to her because her annual production was at least $500,000. At the time MSDW terminated Ms. Jaffe, similarly-situated men (including younger men) with fewer qualifications than she were not terminated. MSDW's stated reason for her termination at the time was that her production levels were not adequate. Ms. Jaffe's production levels were diminished, however, only because MSDW discriminated against her with respect to account distribution and business opportunities, and through its refusal to permit her to relocate to a working office in 2004.

37.     On or about November 1, 2005, Ms. Jaffe filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC"). On June 22, 2006, she received a Notice of Right to Sue from the EEOC. Her charge and Notice of Right to Sue from the EEOC are attached to this Complaint as Exhibit A and are incorporated by reference.

**FIRST CLAIM FOR RELIEF**
**(Intentional Discrimination)**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*)**
**(On behalf of Plaintiff and the Class)**

38.     Plaintiff incorporates the preceding paragraphs as alleged above.

39.     This Claim is brought by the Representative Plaintiff on behalf of herself and the Class she represents. Plaintiff Daisy Jaffe has timely filed a charge with the EEOC

making classwide claims of discrimination as well as individual claims. On June 22, 2006, Plaintiff received a Notice of Right to Sue from the EEOC. Plaintiff has exhausted her administrative remedies on her own behalf and on behalf of the Class at the time of filing.

40. MSDW has maintained a system that is discriminatory, excessively subjective, standardless, and/or arbitrary with respect to the distribution of accounts and business opportunities, compensation and other terms and conditions of employment. MSDW's discriminatory policies or practices described above have denied female Financial Advisors business opportunities and compensation, including past and future wages and other job benefits, as compared to similarly-situated male Financial Advisors.

41. Defendant has intentionally discriminated against Plaintiff and the Class by maintaining a pattern or practice of denying business opportunities and accounts that directly affect compensation to qualified female Financial Advisors on the basis of sex. The foregoing conduct constitutes illegal, intentional discrimination as unjustified disparate treatment prohibited by 42 U.S.C. §§ 2000e *et seq.*

42. Plaintiff requests relief as hereinafter described.

### SECOND CLAIM FOR RELIEF
### (Disparate Impact Discrimination)
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*)
### (On behalf of Plaintiff and the Class)

43. Plaintiff incorporates the preceding paragraphs as alleged above.

44. This Claim is brought by the Representative Plaintiff on behalf of herself and the Class she represents. Plaintiff Daisy Jaffe has timely filed a charge with the EEOC making classwide claims of discrimination as well as individual claims. On June 22, 2006, Plaintiff received a Notice of Right to Sue from the EEOC. Plaintiff has exhausted her administrative remedies on her own behalf and on behalf of the class at the time of filing.

45. MSDW has maintained a system and/or policies that are discriminatory, excessively subjective, standardless, and/or arbitrary with respect to the distribution of accounts and business opportunities which affect compensation and other terms and conditions of employment. This system has an adverse impact on female employees and is not, and cannot be,

justified by business necessity. Even if this system could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

46.     Plaintiff requests relief as hereinafter described.

**THIRD CLAIM FOR RELIEF**
**(Gender Discrimination)**
**(California Fair Employment and Housing Act, Cal. Gov't Code §§ 12940 *et seq.*)**
<u>**(On behalf of Plaintiff and the California Subclass)**</u>

47.     Plaintiff incorporates the preceding paragraphs as alleged above.

48.     This claim is brought on behalf of Plaintiff Daisy Jaffe and the Subclass of female Financial Advisors from California offices.

49.     As described herein, MSDW's actions constitute gender discrimination in violation of the California Fair Employment and Housing Act (FEHA). Plaintiff Daisy Jaffe received a Right to Sue letter from the EEOC on June 22, 2006. The pendency of an EEOC investigation into Plaintiff's charge tolled the time limit for filing a civil action pursuant to the Fair Employment and Housing Act. Plaintiff has timely complied with all prerequisites to sue.

50.     Plaintiff requests relief as hereinafter provided.

**FOURTH CLAIM FOR RELIEF**
**(Age Discrimination)**
**(Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*)**
**(On behalf of Plaintiff only)**

51.     Plaintiff incorporates the preceding paragraphs as alleged above.

52.     This claim is brought on behalf of Daisy Jaffe only.

53.     As described herein, MSDW's actions constitute age discrimination against Daisy Jaffe in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*

54.     Plaintiff Daisy Jaffe has timely filed a charge with the EEOC making individual claims of age discrimination. On June 22, 2006, Plaintiff received a Notice of Right to Sue from the EEOC. Plaintiff has exhausted her administrative remedies on her own behalf with respect to this claim at the time of filing.

55.     Plaintiff Jaffe requests relief as hereinafter provided.

## FIFTH CLAIM FOR RELIEF
### (Age Discrimination)
### (California Fair Employment and Housing Act, Cal. Gov't Code §§ 12940 *et seq.*)
### (On behalf of Plaintiff only)

56.     Plaintiff incorporates the preceding paragraphs as alleged above.

57.     This claim is brought on behalf of Daisy Jaffe only.

58.     As described herein, MSDW's actions constitute age discrimination against Daisy Jaffe in violation of the California Fair Employment and Housing Act (FEHA).  Plaintiff Daisy Jaffe received a Right to Sue letter from the EEOC on June 22, 2006.  The pendency of an EEOC investigation into Plaintiff's charge tolled the time limit for filing a civil action pursuant to the Fair Employment and Housing Act.  Plaintiff has timely complied with all prerequisites to sue.

59.     Plaintiff requests relief as hereinafter provided.

## ALLEGATIONS REGARDING RELIEF

60.     Plaintiff and the Class she seeks to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiff and the Class she seeks to represent are now suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

61.     MSDW's actions have caused and continue to cause Plaintiff and all Class members substantial losses in earnings and other employment benefits.

62.     In addition, Plaintiff and the Class suffer and continue to suffer humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

63.     MSDW performed the acts herein alleged with malice or reckless indifference.  Plaintiff and Class members are thus entitled to recover punitive damages in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

545596. 1                              - 11 -                    CLASS ACTION COMPLAINT

64.    Certification of the case as a class action on behalf of the proposed Class;

65.    Designation of Representative Plaintiff Daisy Jaffe as representative of the Class;

66.    Designation of Representative Plaintiff's counsel of record as Class counsel;

67.    A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. §§ 2000e, *et seq.*, and the California FEHA, Cal. Gov't Code §§ 12940 *et seq.*;

68.    A preliminary and permanent injunction against MSDW and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

69.    An order that MSDW institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, and that it eradicate the effects of its past and present unlawful employment practices;

70.    An order restoring Plaintiff to her rightful position at MSDW, or in lieu of reinstatement, an order for front pay benefits;

71.    Back pay (including interest and benefits) for Plaintiff and individual Class members;

72.    All damages sustained as a result of MSDW's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

73.    Exemplary and punitive damages in an amount commensurate with MSDW's ability to pay and to deter future conduct;

74.    Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

75.    Pre-judgment and post-judgment interest, as provided by law; and

76.     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: June 22, 2006

Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____

Kelly M. Dermody

James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Elizabeth A. Alexander
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue, North, Suite 1650
Nashville, TN 37219-2423
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

Adam T. Klein
Piper Hoffman
Justin M. Swartz
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: June 22, 2006

Respectfully submitted,

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

By: _____
                Kelly M. Dermody

James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Elizabeth A. Alexander
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue, North, Suite 1650
Nashville, TN 37219-2423
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

Adam T. Klein
Piper Hoffman
Justin M. Swartz
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

*Attorneys for the Plaintiffs*

545596. 1                          - 14 -                          CLASS ACTION COMPLAINT

**EXHIBIT A**

- EEOC Form 161-B (3/98)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Ms. Daisy Jaffe<br>3835 Ralston Avenue<br>Hillsboro, CA 94010 | From: | San Francisco District Office - 550<br>350 The Embarcadero<br>Suite 500<br>San Francisco, CA 94105 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 370-2006-00197 | Thomas P. Magee,<br>Investigator | (415) 625-5669 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosure(s)

*Michael Buldonch*
for **H. Joan Ehrlich,**
**District Director**

**JUN 2 2 2006**
*(Date Mailed)*

cc: Ms. Sonia T. Banerji
Law Division
MORGAN STANLEY DEAN WITTER
101 California Street, 2nd Floor
San Francisco, CA 94111

Ms. Elizabeth A. Alexander
Lieff, Cabraser, Heimann & Bernstein, LLP
One Nashville Place
150 Fourth Avenue, North
Suite 1650
Nashville, TN 37219-2423