James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Bill Lann Lee (State Bar No. 108452)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
email: jfinberg@lchb.com
email: kdermody@lchb.com
email: blee@lchb.com
email: hwong@lchb.com

Elizabeth A. Alexander (*pro hac vice*)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
One Nashville Place
150 4th Avenue North, Suite 1650
Nashville, TN  37219-2423
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
email: ealexander@lchb.com

Adam T. Klein (*pro hac vice*)
Piper Hoffman (*pro hac vice*)
Justin M. Swartz (*pro hac vice*)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
email: atk@outtengolden.com
email: ph@outtengolden.com
email: jms@outtengolden.com

*Attorneys for the Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| DAISY JAFFE and DENISE WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY DW, INC.,<br><br>Defendant. | Case No.  C-06-3903 TEH<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>Date:     December 11, 2006<br>Time:    10:00 a.m.<br>Dept.    Courtroom 12<br>Judge:   Honorable Thelton E. Henderson |

**TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | ............................................................................................................ | 1 |
| II. | FACTUAL BACKGROUND | ........................................................................................ | 2 |
| | A. | The Jaffe Case ................................................................................................ | 2 |
| | B. | The Washington Case .................................................................................... | 4 |
| III. | ARGUMENT | .................................................................................................................. | 5 |
| | A. | The First To File Rule Is Not Applicable In This Case. ............................ | 5 |
| | | 1. Neither Complaint was First Filed. ................................................... | 7 |
| | | 2. The Actions Involve Different Parties. ............................................. | 8 |
| | | 3. The Actions Involve Different Issues. .......................................... | 10 |
| | B. | Equitable Considerations Also Weigh Against A Stay Of Class Claims Here. ............................................................................................... | 11 |
| IV. | CONCLUSION | ............................................................................................................. | 14 |

# TABLE OF AUTHORITIES

Page

**Cases**

Ainsworth v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
  298 F.Supp. 479 (W.D. Okla. 1969) .................................................................................... 7

Alltrade v. Uniweld Prods., Inc.,
  946 F.2d 622 (9th Cir. 1991) .................................................................................... 5, 6, 9

Briarwood Shoe Corp. v. Sears, Roebuck & Co.,
  479 F.Supp. 563 (S.D.N.Y. 1979) .................................................................................... 7

Capitol Records, Inc. v. Optical Recording Corp.,
  810 F.Supp. 1350 (S.D.N.Y. 1992) .................................................................................... 8

Cedars-Sinai Med. Ctr. v. Shalala,
  125 F.3d 765 (9th Cir. 1997) .................................................................................... 6, 7, 10

Charles Schwab & Co. v. Duffy, III,
  1998 WL 879658, at *1 (N.D. Cal. Dec. 8, 1998) .................................................................................... 6

City of Los Angeles v. Lyons,
  461 U.S. 95 (1983) .................................................................................... 9

District Counsel 37 Health Sec. Plan v. McKesson Corp.,
  2006 WL 1305235, at *1 (N.D. Cal. May 11, 2006) .................................................................................... 6, 9

Gribin v. Hammer Galleries,
  793 F.Supp 233 (C.D. Cal. 1992) .................................................................................... 6

Hooker Chem. v. Diamond Shamrock Corp.,
  87 F.R.D. 398 (W.D.N.Y. 1980) .................................................................................... 7

Kerotest Mfg. Co. v. C-O-Two Fire Equip., Co.,
  342 U.S. 180 (1952) .................................................................................... 6

Mattel, Inc. v. Louis Marx & Co., Inc.,
  353 F.2d 421 (2nd Cir. 1965) .................................................................................... 7

Murillo v. Rite Stuff Foods, Inc.,
  77 Cal. Rptr. 2d 12, 65 Cal. App. 4th 833 (App. 2 Dist. 1998) .................................................................................... 10

Ontel Prods. Inc. v. Project Strategies Corp.,
  899 F.Supp. 1144 (S.D.N.Y. 1995) .................................................................................... 7

Pacesetter Sys. v. Medtronic, Inc.,
  678 F.2d 93 (9th Cir. 1982) .................................................................................... 6, 11

Peak v. Green Tree Fin. Serv. Corp.,
  2000 WL 973685, at *2 (N.D. Cal. July 7, 2000) .................................................................................... 7

Recton Corp. v. Allsop, Inc.,
  999 F.Supp. 574 (S.D.N.Y. 1998) .................................................................................... 8

Rivera Trading Corp. v. Oakley, Inc.,
  944 F.Supp. 1150 (S.D.N.Y. 1996) .................................................................................... 8

Rosenburg v. International Business Machines Corp.,
  2006 WL 1627108, at * 10, No. C 06-0430 PJH (N.D. Cal. June 12, 2006) .................................................................................... 9

Semmes Motors, Inc. v. Ford Motor Co.,
  429 F.2d 1197 (2d Cir. 1970) .................................................................................... 6

Sharpe v. American Exp. Co.,
  689 F.Supp. 294 (S.D.N.Y. 1988) .................................................................................... 3

Sosan v. Iowa,
   419 U.S. 393 (1975) ............................................................................................................ 9
Ward v. Follett Corp.,
   158 F.R.D. 645 (N.D. Cal. 1994) .................................................................................... 6, 7
Z-Line Designs, Inc. v. Bell'O Int'l, LLC,
   218 F.R.D. 663 (N.D. Cal. 2003) .................................................................................... 6, 8

**Statutes**
M.C.L.A.
   § 37.2801 ............................................................................................................................ 10

I.   **INTRODUCTION**

In June 2006, Plaintiffs filed their original class action complaint. Now, four months later, Defendant Morgan Stanley D.W., Inc. ("MSDW") has moved to stay Plaintiffs' class claims. MSDW argues that the class claims should be stayed because another lawsuit with similar claims was filed in the United States District Court for the District of Columbia, <u>Augst-Johnson v. Morgan Stanley DW, Inc.</u>, Case No. 06-C-01142-RWR (D.D.C.) ("the Washington case") on the same date as this one. Among other things, MSDW suggests that the class claims in this action should be stayed under the "first-to-file" rule. However, the two cases at issue were filed on the same day and do not involve the same parties or coextensive claims. The first-to-file rule clearly does not apply here.

While MSDW admits that not all of the prerequisites of the first-to-file rule are met here, it argues that the Court should grant a stay based on the fact that MSDW began negotiations with the Washington plaintiffs prior to the filing of either action. This is not a valid basis to apply the first-to-file rule. There is no authority, and MSDW cites none, holding that the first party to "discuss" settlement should be permitted to maintain an action, while all other generally similar actions filed by different parties should be stayed.

Contrary to MSDW's position, Plaintiffs here are actually in a superior position to fully vindicate the rights of the class for three distinct reasons. First, unlike this action the Washington case lacks a named plaintiff who is currently employed by MSDW. Therefore, the plaintiffs there might not have standing to seek equitable and injunctive relief for the class under D.C. Circuit law, while Plaintiffs here—who include a current employee—would. Second, unlike this case, the Washington case only asserts claims under Title VII and does not assert claims pursuant to the California Fair Employment and Housing Act or bring claims on behalf of a California subclass. Third, unlike this case, there is no plaintiff named in the Washington case who was employed in Michigan and thus, unlike here, the Washington plaintiffs cannot bring claims under Michigan law.

MSDW also suggests that litigation of class claims here will somehow disrupt the settlement efforts in the Washington case. There is no basis for this suggestion. In fact, it is far

more likely that Plaintiffs' pursuit of their claims here will only incentivize MSDW to continue reportedly productive settlement negotiations which have now been underway.  Contrary to MSDW's suggestion, counsel for Plaintiffs have no intention of disrupting any settlement negotiations to the detriment of their clients and the proposed class.[1] Equity favors permitting Plaintiffs to prosecute all their claims, instead of requiring them to rely on speculation about a possible settlement that may never occur or, if it does, may not adequately protect their interests.

Moreover, there is no evidence that this case will duplicate judicial resources.  The Washington case is essentially stayed, and there is no indication in the record or in MSDW's Motion that it will be prosecuted.

For these reasons, and as set forth more fully below, Plaintiffs oppose MSDW's attempt to stall the prosecution of their class claims indefinitely, and respectfully request that the Court deny MSDW's Motion.

**II.     FACTUAL BACKGROUND**

   **A.     The Jaffe Case**

On June 22, 2006, Plaintiff Daisy Jaffe, on behalf of herself and other female current and former Financial Advisors employed by MSDW, filed this action alleging that MSDW had engaged in a continuing pattern or practice of gender discrimination against female Financial Advisors in the allocation of compensation and business opportunities at its branch offices nationwide in violation of Title VII, 42 U.S.C. §§ 2000e et seq.  (Dkt. No. 1.)

Ms. Jaffe resides in California and is a former Financial Advisor with MSDW in California.  Ms. Jaffe also seeks to represent a subclass of female current and former Financial Advisors employed by MSDW in California who allege gender discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940 et seq.  Additionally, Ms. Jaffe alleges individual claims of age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. and the FEHA.

On October 12, 2006, Plaintiffs filed an Amended Complaint adding Denise Williams as a

---

[1] Although the Court need not consider this to deny the instant motion, if counsel here also participated in those discussions, they would bring considerable experience and value.

named plaintiff. (Dkt. No. 25.) Ms. Williams is a current Financial Advisor with MSDW in Detroit, Michigan. In addition to representing the class members with respect to their claims of gender discrimination under Title VII, Ms. Williams also seeks to represent a subclass of female current and former Financial Advisors employed by MSDW in Michigan alleging gender discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act, M.C.L.A. §§ 37.2101 et seq. Ms. Williams also alleges individual claims of race discrimination. Plaintiffs seek damages and declaratory and injunctive relief for MSDW's gender discrimination on behalf of themselves and the class and subclasses they seek to represent.[2]

By Order of the Court, the Initial Case Management Conference was scheduled for September 26, 2006. (Dkt. No. 2.) MSDW informed Plaintiffs' counsel that it had been in settlement negotiations with counsel for the Augst-Johnson plaintiffs shortly after Ms. Jaffe filed the original Complaint. Declaration of Adam T. Klein in Support of Plaintiffs' Motion in Opposition to Defendant's Motion to Stay (Klein Decl.) at ¶ 2. MSDW requested that Plaintiffs agree to extend the time for MSDW to respond to the Jaffe Complaint in the hopes that some resolution could be reached in those negotiations.[3] Id. Based on this representation by MSDW, between July 14 and September 14, 2006, Plaintiffs stipulated to three extensions of time for MSDW to respond to Plaintiff's Complaint. Id. (Dkt. Nos. 3, 12, 18.)

On September 14, 2006, just 12 days before the Initial Case Management Conference was scheduled to proceed, MSDW filed a Declination to Proceed Before Magistrate Judge and Request for Reassignment. (Dkt. No. 15.) The case was subsequently reassigned to this Court. (Dkt. No. 20.) By Order entered September 18, 2006, the Court continued the Initial Case

---

[2] The Amended Complaint changed the temporal scope of the class definition originally set forth in the Complaint to begin on August 3, 2003. The amended class definition was based on the earliest EEOC charge filed on behalf of a female Financial Advisor class at MSDW. See Sharpe v. American Exp. Co., 689 F.Supp. 294 (S.D.N.Y. 1988) (earliest filed EEOC charge tolls statute of limitations for all putative class members).

[3] Counsel for Plaintiffs have previously requested that MSDW include them in the settlement negotiations in order to protect their clients' interests. Klein Decl. at ¶ 3. MSDW has rejected this request. Id. However, the only way for Plaintiffs' counsel reliably to evaluate the settlement progress and positions is to permit Plaintiffs' counsel to consider the information exchanged and/or participate in those discussions.

1  Management Conference to October 2, 2006. (Dkt. No. 21.) On September 19, 2006, defense
2  counsel asked Plaintiffs' counsel for an additional continuance of the Initial Case Management
3  Conference from October 2, 2006 to October 30, 2006. See Klein Decl. at ¶ 4. Plaintiffs'
4  counsel agreed to this request, and the parties filed a joint stipulation requesting that the schedule
5  be modified accordingly. (Dkt. No. 22.) The Court entered that stipulation and the Initial Case
6  Management Conference was continued until October 30, 2006. (Dkt. No. 24.)

7        The parties conducted their Rule 26 conference on October 20, 2006. Klein Decl. at ¶ 5.
8  On October 20, 2006, Plaintiffs served Initial Disclosures pursuant to Rule 26(a)(1) of the Federal
9  Rules of Civil Procedure for Plaintiff Jaffe. Id. at ¶ 6, Exhibit 1. On October 23, 2006, Plaintiffs
10 propounded their First Requests for Production of Documents on MSDW. Id. at ¶ 7; Exhibit 2.
11 On October 24, 2006, the parties submitted a Joint Case Management Statement and Rule 26(f)
12 Report. (Dkt. No. 37.) On October 25, 2006, Plaintiffs noticed four depositions for MSDW
13 witnesses to testify pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Klein
14 Decl. at ¶ 8; Collective Exhibit 3. Those depositions were noticed for December 11-14, 2006, but
15 have been stayed by agreement pending the resolution of this Motion. Id.

16       The Case Management Conference was held on October 30, 2006. At that point, MSDW
17 informed the Court and counsel for the Plaintiffs that it intended to file its Motion to Stay. Klein
18 Decl. at ¶ 9.

19     **B.**    **The Washington Case**

20       On June 22, 2006, the same day that the Jaffe Complaint was filed, Augst-Johnson v.
21 Morgan Stanley DW, Inc., Case No. 06-C-01142-RWR (D.D.C.), was filed in the United States
22 District Court for the District of Columbia. The named Plaintiffs in the Washington case are five
23 former female Financial Advisors of MSDW who seek to represent a nationwide class of current
24 and former female Financial Advisors claiming gender discrimination under Title VII. See
25 Declaration of Mark S. Dichter in Support of Defendant's Motion to Stay (Dkt. No. 51-1), Exhibit
26 A. The basis for the Title VII claims in the Washington case are essentially the same as those
27 alleged by Plaintiffs here.

28       Although Defendant's Memorandum in Support of its Motion to Stay asserts that the

Washington Complaint contains causes of action for gender discrimination "under parallel state and local laws prohibiting gender discrimination," (Memorandum at 4), the Washington Complaint does not make any claims or plead any causes of action under state law.  Dichter Decl., Exh. A.  Instead, the Washington Complaint merely states that the named Plaintiffs "reserve the right to seek to represent sub-classes of the nation-wide class."  Id.

The prosecution of the Washington case has been put on hold since it was filed.  Other than the Complaint, the only entries of any substance on the docket in that case are Motions to Appear Pro Hac Vice and Orders of the Court extending the deadline for MSDW to file its Answer.  Klein Decl. at ¶ 12; Exhibit 4.  No other progress has been made in the prosecution of that case.

Nothing in the record supports MSDW's contention that the settlement negotiations with the Washington plaintiffs are in an advanced state.  While MSDW states that the mediator, Hunter Hughes has commented that the "18 months" of settlement discussions have been "fruitful," (Memorandum at 9), Mr. Hughes recently informed counsel for Plaintiffs that he was not retained until "4 or 5 months ago"—perhaps in Spring of 2006 at the earliest, and possibly later.  Klein Decl. at ¶ 13.  MSDW's characterization of Mr. Hughes' comment is thus misleading.  Moreover, there is absolutely no basis to determine that MSDW will ever settle the Washington case on a class-wide basis, nor that it will do so on appropriate terms, especially if MSDW believes it has no risk of having to defend itself from legitimate discrimination claims, such as alleged here.

## III.    ARGUMENT

MSDW has failed to offer any legitimate basis to stay this case.

### A.    The First To File Rule Is Not Applicable In This Case.

A district court may apply the first-to-file rule only if three prerequisites are met: (1) chronology—one complaint was filed before the other; (2) the same parties are involved in both lawsuits; and (3) the issues in the two suits are the same.  Alltrade v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991).  "Under that rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."  Cedars-Sinai

1  Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997) (citing Alltrade, 946 F.2d at 628-29; Pacesetter Sys. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982); Kerotest Mfg. Co. v. C-O-Two Fire Equip., Co., 342 U.S. 180, 183-84 (1952).  However, a stay is not appropriate because none of the three prerequisites are met here.

In general, courts have applied the first-to-file rule under two sets of narrow circumstances, neither of which is remotely like the situation here.  The two circumstances in which the rule is generally applied are:  (1)  a plaintiff has lost in one court, and then files a nearly identical complaint against some of the same defendants in another court, or (2) the parties question the validity of an intellectual property right or a contract and each of the parties is a plaintiff in one of two competing suits--one action seeking to enforce the rights to the intellectual property or contract, and the other seeking declaratory relief that there are no intellectual property rights or that the contract is invalid or unenforceable.  All but one of the cases that MSDW relied on in its Memorandum involved one of these two situations.  See Alltrade, 946 F.2d 622 (plaintiff sought a declaratory judgment that it did not infringe on defendant's trademark); Charles Schwab & Co. v. Duffy, III, 1998 WL 879658, at *1 (N.D. Cal. Dec. 8, 1998) (first-to-file rule was not applied because the plaintiff's declaratory judgment action was filed in anticipation of the defendant's infringement action); District Counsel 37 Health Sec. Plan v. McKesson Corp., 2006 WL 1305235, at *1 (N.D. Cal. May 11, 2006) (plaintiff filed the same cause of action in two districts); Gribin v. Hammer Galleries, 793 F.Supp 233 (C.D. Cal. 1992) (noting that "Defendants cite a plethora of cases from other circuits to buttress the notion that the Declaratory Judgment Act should not be used to 'deprive the plaintiff of his traditional choice of forum and timing'"); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970) (plaintiff was losing in one court, then filed a nearly identical suit in another court); Ward v. Follett Corp., 158 F.R.D. 645 (N.D. Cal. 1994) (dismissing employee's case for royalties where the employer had first filed an action seeking declaratory judgment that the employment contract did not require payment of royalties); Z-Line Designs, Inc. v. Bell'O Int'l, LLC, 218 F.R.D. 663, 677 (N.D. Cal. 2003) (declaratory judgment action was filed in anticipation of a copyright infringement suit and was dismissed because it was "triggered by a cease and desist letter," and therefore, "equity militates

1  in favor of allowing the second-filed action to proceed to judgment rather than the first.").

2  In the only case MSDW relied on that does not fall within these narrow parameters, the
3  court applied the first-to-file rule because the rule's three prerequisites, "chronology of the two
4  actions, the similarity of the parties, and the similarity of the issues," were met. Peak v. Green
5  Tree Fin. Serv. Corp., 2000 WL 973685, at *2 (N.D. Cal. July 7, 2000). This is not the case
6  here, and thus, MSDW's Motion is without merit.

### 1.     Neither Complaint was First Filed.

8  The first prerequisite to the application of the first-to-file rule is that one case be filed
9  before the other. Cedars-Sinai, 125 F.3d at 769. The rule is not applicable to simultaneously-
10 filed cases such as the two cases at issue here, which MSDW admits were filed on the same day.
11 Memorandum at 9 ("Here, the Jaffe Action and the D.C. Action were filed on the same day").
12 When two cases are filed on the same day, the first-to-file rule does not apply. Ontel Prods.
13 Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1153 (S.D.N.Y. 1995); see also Employers
14 Reinsurance Corp. v. MSK Ins., Ltd., 2003 WL 21143105, at *6 (March 31, 2003 D. Kan.)
15 (stating that, "When competing actions are filed within a short time of each other, courts may
16 disregard the first-filed rule," and refusing to apply the rule when two suits were filed within
17 eleven weeks of each other stating, "given the close proximity of the initiation of the two actions,
18 and the simultaneous service of process in May, the court concludes that the first-to-file rule is
19 not applicable in this case"); see also Briarwood Shoe Corp. v. Sears, Roebuck & Co.,
20 479 F.Supp. 563, 568 (S.D.N.Y. 1979) (two-day difference in filing was not significant enough to
21 warrant application of the first-to-file rule). In this case, because both Complaints were filed on
22 the same day, the first-to-file rule is, likewise, inapplicable.[4]

23 Even though MSDW admits that the two cases at issue were filed simultaneously, it

---

[4] It is important to note that, "In determining when a party filed an action for purposes of the first to file rule, courts focus on the date upon which the party filed its original, rather than its amended complaint." Ward, 158 F.R.D. at 648 (citing Mattel, Inc. v. Louis Marx & Co., Inc., 353 F.2d 421, 424 (2nd Cir. 1965); cert. denied 384 U.S. 948 (1966); Ainsworth v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 298 F.Supp. 479, 489 (W.D. Okla. 1969); Hooker Chem. v. Diamond Shamrock Corp., 87 F.R.D. 398, 401-04 (W.D.N.Y. 1980).

nevertheless contends that this action should be stayed because MSDW and the Washington plaintiffs discussed settlement prior to the filing of this case. Memorandum at 9. As its name suggests, however, the first-to-file rule concerns only whether one case was filed first, not whether one party began investigating a case first or whether settlement talks occurred in one case before the other. MSDW fails to cite a single case in which claims were dismissed or stayed in favor of another case on the grounds that the attorneys in the other case started discussing it with opposing counsel earlier. Indeed, it would be preposterous if companies were inoculated from defending themselves in any subsequent litigation merely because they had preliminary, exploratory settlement talks with individuals who had not filed litigation.

In Z-Line Designs, Inc. v. Bell'O International, LLC, relied on by Defendant, the court held that the first-to-file rule would not be applied because the first filed case was a declaratory judgment action, filed in anticipation of the second action after the defendant issued a cease and desist letter to the plaintiff. The court stated that the second-filed case should be permitted to go forward because the first filed case was "filed upon receipt of specific, concrete indications that a suit by defendant was imminent," and noted that, "such anticipatory suits are disfavored because they are examples of forum shopping. Z-Line Designs, Inc., 218 F.R.D. at 667. The court also noted that the application of the first-to-file rule was not warranted because the complaints were filed within two days of each other. Id. (citing Recton Corp. v. Allsop, Inc., 999 F.Supp. 574, 577 (S.D.N.Y. 1998)(refusing to apply the first-to-file rule where cases were filed two days apart); Rivera Trading Corp. v. Oakley, Inc., 944 F.Supp. 1150, 1159 (S.D.N.Y. 1996) (four days); Capitol Records, Inc. v. Optical Recording Corp., 810 F.Supp. 1350, 1354 (S.D.N.Y. 1992)(20 days)).

Both of the Complaints at issue here were filed on the same day, June 22, 2006. Accordingly, the first prerequisite under the first-to-file rule is not met in this case. For this reason, Defendant's Motion must fail.

### 2. The Actions Involve Different Parties.

The United States Court of Appeals for the Ninth Circuit has stated that where "the issues or parties involved in the two suits [are] not the same, adherence to the first-to-file rule *would* be

a reversible error for it would constitute a misapplication of the law." Alltrade, Inc., 946 F.2d at 628 n. 13 (emphasis in the original). The parties to this case and the issues they raise are different than those in the Washington case in several important respects.

Most obviously, different plaintiffs have filed each case. In addition, all of the Washington plaintiffs are former employees, while Plaintiffs here include both a current and former employee. The class representatives here, therefore, are in a better position than the Washington plaintiffs to seek injunctive relief on behalf of the class. Although some courts in the Ninth Circuit have held that former employees do have standing to seek injunctive relief, see e.g., Rosenburg v. International Business Machines Corp., 2006 WL 1627108, at * 10, No. C 06-0430 PJH (N.D. Cal. June 12, 2006), there is a risk that injunctive relief may not be available to former employees in the D.C. Circuit. See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (in order to have standing to seek injunctive relief, plaintiffs must be able to demonstrate a "likelihood of substantial and immediate irreparable injury").

In addition, none of the named plaintiffs in the Washington case are or were employed by MSDW in Michigan. Because only a Michigan employee can represent a class of similarly situated Michigan employees under the Elliot-Larsen Human Rights Act, none of the Washington plaintiffs have standing to bring a claim for gender discrimination on behalf of the Michigan subclass for a violation of that statute. See, e.g., Sosan v. Iowa, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class he or she seeks to represent at the time the class action is certified by the district court"). Thus, between the two actions at issue, the only named plaintiff with standing to bring Michigan claims is Denise Williams, who is named only in this case.

MSDW's reliance on District Council 37 is misplaced. In that case, there was only one class, and no subclasses were named in either of the filed cases. See District Council 37, 2006 WL 1305235. Unlike that case, here the members of the subclasses are not identical to the class, and therefore the parties in the two cases are not the same.

Ms. Williams should be permitted to proceed with the Michigan claims she has brought on behalf of herself and the Michigan subclass. To prevent her from doing so would prejudice Ms. Williams and all female Financial Advisors employed by MSDW in Michigan because the

1   Washington plaintiffs cannot assert the subclass claims she raises.

2   For these reasons, the parties in this case and the Washington case are not the same, and therefore do not meet the second prerequisite of the first-to-file rule. Cedars-Sinai, 125 F.3d at 769. Defendant's Motion should be denied.

### 3. The Actions Involve Different Issues.

MSDW's attempt to apply the first-to-file rule also must fail because the two cases here do not share the same issues, which is the third prerequisite of the first-to-file rule. Cedars-Sinai, 125 F.3d at 769 (the district court properly refused to apply the first-to-file rule where the issues in the two cases were distinct). Although MSDW contends that the Washington Complaint raises claims under state laws, it does not allege any state law claims. It merely states that the plaintiffs reserve the right to represent sub-classes of the nation-wide class. Dichter Decl., Exh. A at ¶ 18. Such a generalized statement is not sufficient to invoke the protections of California or Michigan law, especially were there is no Michigan plaintiff with standing to bring claims under Michigan law. Notably, if MSDW's construction of the first-to-file rule were followed, any vaguely plead class action alleging nonspecific claims "under the laws of all fifty states" could preclude other specific filings by state residents under pertinent state laws, regardless of whether the plaintiffs in those other cases had standing to bring those claims. This is not the law.

As set forth above, because there is no plaintiff named in the Washington case who was employed in Michigan, no claim under Michigan law *can* be brought in the Washington case. Although certain named plaintiffs in the Washington case are former employees of MSDW in California who presumably could have brought a claim under the California Fair Employment and Housing Act, they do not raise those claims. Because they do not raise the California claims, and because they cannot raise claims under Michigan law, the issues in this case and the Washington cases are distinct.

Both California and Michigan state discrimination laws afford greater protections than their federal counterpart, Title VII. Under the laws of either of these states, unlimited compensatory and punitive damages may be awarded. See Murillo v. Rite Stuff Foods, Inc., 77 Cal. Rptr. 2d 12, 65 Cal. App. 4th 833 (App. 2 Dist. 1998); M.C.L.A. § 37.2801. These

damages are capped for claims brought under Title VII.  See 42 U.S.C. § 1981a(b).  Defendant is, therefore, incorrect in its contention that the Washington case "subsumes" the claims of the California and Michigan subclasses.  Those claims cannot be subsumed by the Washington case because the claims brought by the California and Michigan subclasses offer the subclass members greater protection than offered by Title VII, which is the only statute invoked by the Washington plaintiffs.  Because the final prerequisite for application of the first-to-file rule is not met, MSDW's Motion to Stay is without merit.

### B. Equitable Considerations Also Weigh Against A Stay Of Class Claims Here.

Even if the Court were to find that all of the prerequisites of the first-to-file rule had been met, equitable considerations weigh against a stay of the class claims here.  It would be unjust for the Court to require Plaintiffs to rely on counsel for the Washington case, whom they did not retain, to represent them in their claims against MSDW in the hopes that the Washington counsel would reach a fair settlement resolution on their behalf and on behalf of the class and subclasses they seek to represent.  This is especially true in light of the fact that (1) Plaintiffs and the subclasses they seek to represent have the potential for an award of greater damages under California and Michigan law than are available to the Washington class under Title VII; (2) the Washington plaintiffs lack standing to bring claims under Michigan law; and (3) as former employees, the Washington plaintiffs may lack standing to seek injunctive or equitable relief in their own case.

MSDW contends that it is a waste of judicial resources for this case to be litigated here and in Washington.  MSDW is correct that the first-to-file rule is designed to preserve judicial resources so that two courts do not preside over two identical matters.  Pacesetter Sys. Inc., 678 F.2d at 95.  As the record reflects, however, the Washington case *is* essentially stayed.  MSDW has not presented any information suggesting that case will be actively litigated.  Accordingly, even if this case is not stayed, two courts will not be required to expend judicial resources duplicatively.

MSDW's Motion does not support its argument that permitting this case to proceed would disrupt the advanced settlement discussions that are ongoing between the Washington plaintiffs

1  and MSDW. First, the record does not support MSDW's assertion that the settlement
2  negotiations are even advanced. In fact, contrary to MSDW's suggestion otherwise, mediator
3  Hunter Hughes has only recently begun facilitating settlement negotiations. Klein Decl. at ¶ 13.
4  Moreover, the Washington case has hardly proceeded at all. Second, it is inevitable that
5  continuing litigation by experienced counsel will only benefit the position of the class in
6  settlement negotiations, not hurt the class. Plaintiffs' counsel acknowledge that MSDW may
7  prefer to stop this litigation and stonewall Plaintiffs here on settlement discussions in order to
8  enhance MSDW's settlement position elsewhere. But protecting MSDW from the threat of
9  litigation pressure or additional, experienced settlement negotiators is not a reason to stay.

10  Plaintiffs here are diligently working to advance their case. Plaintiffs' counsel have
11  already made initial disclosures, served discovery requests, noticed depositions pursuant to
12  Rule 30(b)(6) of the Federal Rules of Civil Procedure and submitted a Joint Proposed Case
13  Management Order to the Court. A Case Management Conference was held in this matter on
14  October 30, 2006.[5]

15  Permitting Plaintiffs to pursue their claims will not disrupt the Washington mediation. If
16  this Court held otherwise, then every case in which there are ongoing settlement negotiations
17  would be subject to a stay at the request of the defendant. Defendants are not entitled to stay
18  claims simply because they are willing to discuss a possible resolution of another, different case
19  with some similarities to the one filed.

20  MSDW's counsel is competent to litigate this matter while pursuing a settlement,
21  especially if the settlement discussions are as advanced as MSDW contends. MSDW is a Fortune
22  500 company doing business in 30 countries and is one of the largest financial institutions in the
23  United States. (Dkt. No. 25 at ¶ 19.) It recently reported annual revenues of $52.1 billion, a net

---

[5] MSDW suggests that counsel for Plaintiffs took these steps only to establish that this case is more advanced than the Washington case. Memorandum at 7. This is untrue. In fact, at the time these steps were taken, this Motion was not on file. Moreover, Plaintiffs took all of these steps (except for serving deposition notices) before MSDW even advised them of its intent to stay the class claims. Further, Plaintiffs completed initial disclosures and the filing of the Joint Case Management statement pursuant to the federal and local rules.

income of $4.9 billion and assets of $898.5 billion.  Id.  As of March 17, 2006, Morgan Stanley had a market value of $64.7 billion.  Id.  There is no question that MSDW has sufficient resources to both defend any claims brought here and pursue settlement talks here or elsewhere.  MSDW's contention that Plaintiffs will disturb the ongoing settlement negotiations if allowed to pursue class claims is without any foundation.

Further, as indicated above, counsel here have no intention of disrupting the settlement negotiations between the Washington plaintiffs and MSDW, despite MSDW's suggestion otherwise.  If anything, the actions of Plaintiffs' counsel here in agreeing to numerous continuances over the course of many months to permit the Washington settlement discussions to continue indicate their willingness to work to further the settlement negotiations.  At this point, however, Plaintiffs wish to pursue their claims and protect their interests.  Moreover, if the class claims are not permitted to continue, it will obviate a major incentive for MSDW to settle any claims on behalf of the class.

Although Counsel's participation in settlement discussions is not at issue in this motion, it is worth noting that the participation of counsel for Plaintiffs in the settlement discussions would only add value to the negotiations.  Plaintiffs' counsel have significant experience in litigating gender discrimination class actions, including working with experts in statistical analysis of compensation disparities of the type alleged here, as well as with industrial psychologists.  Klein Decl. at ¶ 14.  Class counsel have also had experience working with mediator Hunter Hughes on several employment discrimination matters, including national employment discrimination lawsuits filed against Home Depot and Abercrombie & Fitch in this District that were settled with the assistance of Mr. Hughes.  Id. at ¶ 15.  Lieff, Cabraser attorneys James F. Finberg, Bill Lann Lee, and Kelly M. Dermody, all of whom are counsel in this case, acted as lead counsel in those cases.  Id.

Outten & Golden LLP ("O&G") routinely counsels and/or represents professional women with gender discrimination claims against Morgan Stanley.  Id. at ¶ 16.  One client represented by O&G was Allison Schieffelin, who filed EEOC charges of gender discrimination on behalf of herself and all similarly situated women in the Institutional Equity Division at Morgan Stanley.

Id. at ¶ 17.  Ms. Schieffelin's charges led to several years of impact litigation, in which the EEOC sued Morgan Stanley for discriminating against female professionals and O&G intervened on behalf of Ms. Schieffelin.  Id.  The case eventually settled for significant damages and substantial injunctive relief with O&G and Adam Klein playing leading roles in the prosecution of the case.  Id.  Over the course of this and its many other cases against Morgan Stanley, O&G has become very familiar with Morgan Stanley's structure, personnel, compensation and promotion policies, and legal strategies.  Id. at ¶ 18.  This depth of experience can only benefit the settlement negotiations.

While the Court need not decide that Plaintiffs' counsel here should participate in settlement discussions in order to deny the stay motion, Plaintiffs respectfully submit that it would be appropriate and in the class' best interests to order the parties to mediation on the same dates as the mediation for the Washington case.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Stay.

Dated:  November 20, 2006      Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
       Elizabeth A. Alexander

James M. Finberg (State Bar No. 114850)
Kelly M. Dermody (State Bar No. 171716)
Bill Lann Lee (State Bar No. 108452)
Heather H. Wong (State Bar No. 238546)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

| | |
|---|---|
| 1 | Elizabeth A. Alexander (*pro hac vice*) |
| 2 | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>One Nashville Place |
| 3 | 150 4th Avenue North, Suite 1650<br>Nashville, TN  37219-2423 |
| 4 | Telephone:  (615) 313-9000<br>Facsimile:  (615) 313-9965 |
| 5 | Adam T. Klein (*pro hac vice)*<br>Piper Hoffman (*pro hac vice*) |
| 6 | Justin M. Swartz (*pro hac vice*)<br>OUTTEN & GOLDEN LLP |
| 7 | 3 Park Avenue, 29th Floor<br>New York, New York 10016 |
| 8 | Telephone:  (212) 245-1000<br>Facsimile:  (212) 977-4005 |
| 10 | *Attorneys for Plaintiffs* |