IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAISY JAFFE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY & CO., INC.,<br><br>Defendant. | NO. C 06-3903 TEH<br><br>ORDER (1) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT; (2) PROVISIONALLY CERTIFYING SETTLEMENT CLASSES; (3) DIRECTING DISTRIBUTION OF NOTICE OF THE SETTLEMENT; (4) SETTING A SCHEDULE FOR THE FINAL APPROVAL PROCESS; (5) DENYING OBJECTORS' MOTION FOR LEAVE TO FILE ADDITIONAL BRIEFS, AND (6) DENYING MOTION FOR ACCESS TO DOCUMENTS FILED UNDER SEAL |

This matter came before the Court on December 3, 2007 on the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Settlement Class, Approval and Distribution of Notice of Settlement, and Approval of a Schedule for the Final Settlement Approval Process.  The Court did not grant preliminary approval of the settlement at that time.  Instead, by Order dated December 12, 2007 ("Order"), the Court invited the parties to submit additional evidence and briefing in support of the settlement. Both parties submitted additional briefs and declarations in support of the settlement, including an amended settlement agreement and notice.[1]  Objectors to the settlement ("the Moore Group") have also requested discovery and move for access to certain documents filed in support of the settlement under seal.

---

[1]  Although the Court explicitly sought additional submissions "from the parties only," counsel for Objectors have sought leave to file a 20-page brief and nearly two and half inches of supporting documents that address Ms. Curtis-Bauer's adequacy as a representative and point out perceived deficiencies in the settlement agreement.  The request for leave to file additional submissions is DENIED.  The Court will not consider a motion for reconsideration of this Order. Counsel for the Moore Group Objectors are forewarned that further repetitive submissions may subject them to sanctions under 28 U.S.C. § 1927 for vexatiously multiplying this litigation.

The Court has carefully reviewed all the documents filed by the Parties in this action in support of the settlement, and all the documents properly filed by Objectors. As set out more fully below, because the Court now has sufficient facts before it to evaluate the settlement, the Objectors' request for discovery is DENIED, and their request to obtain access to documents filed under seal is also DENIED. The Court finds that the Parties' additional submissions have assuaged its concerns about both the adequacy of representation and the fairness of the settlement, which appears at this stage to be fundamentally fair, adequate and reasonable when viewed as a whole. The Court therefore GRANTS provisional class certification and preliminary approval of the settlement.

## I.     JURISDICTION

This Court has jurisdiction over the subject matter of the litigation and over all parties to this litigation, including all members of the Settlement Classes, as defined below.

## II.     NO DETERMINATION

This Court hereby decrees that neither the Settlement Agreement, nor this preliminary approval order, nor the fact of a settlement, are an admission or concession by the Defendant of any liability or wrongdoing.

## III.     REQUEST FOR DISCOVERY

The Moore Group Objectors seek discovery from the parties. First, they want "the workforce data Morgan Stanley provided to plaintiff's counsel," including human resources, payroll, account transfer and team data. Second, the Moore Group also asks the Court to require Morgan Stanley to respond to several questions in order to allow it to evaluate the adequacy of the injunctive relief. Third, Objectors seek disclosure of the Power Ranking and the adverse impact studies Plaintiffs performed on the Power Ranking formula, along with the underlying data. Finally, Objectors want to be permitted to depose or cross-examine named Plaintiff Margaret Benay Curtis-Bauer.

This Court may, in its discretion, grant discovery necessary to enable objectors to have meaningful participation in settlement proceedings.  As one California district court recently summarized:

> Class members who object to a class action settlement do not have an absolute right to discovery; the Court may, in its discretion, limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement. *See e.g., In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D.Ga.1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C.2001); *In re Ford Motor Co. Bronco II Prods. Liability Litig.*, Civ. A. No. MDL-991, 1994 WL 593998, 1994 U.S. Dist. LEXIS 15867 (E.D.La. Oct. 28, 1994); *Glicken v. Bradford*, 35 F.R.D. 144, 148 (S.D.N.Y.1964); *see generally* A. Conte and H. Newberg, NEWBERG ON CLASS ACTIONS § 11:57 at 184 (4th ed.2002) ("NEWBERG"). "While objectors are entitled to 'meaningful participation' in the settlement proceedings, *Girsh v. Jepson*, 521 F.2d 153, 158 (3rd Cir.1975) and 'leave to be heard,' *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977), they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.' " *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n. 6 (6th Cir.1984), citing *Cotton*, 559 F.2d at 1331. Objectors should be allowed "meaningful participation in the fairness hearing without unduly burdening the parties or causing an unnecessary delay." *Domestic Air*, 144 F.R.D. at 424. The fundamental question is whether the district judge has sufficient facts before him to intelligently approve or disapprove the settlement. *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d at 1084 n. 6, *citing Detroit v. Grinnell*, 495 F.2d 448, 463-468 (2d Cir.1974).

*Hemphill v. San Diego Ass'n of Realtors, Inc*. 225 F.R.D. 616, 619-620 (S.D.Cal. 2005).

As set out more fully below, this Court finds that Objectors have had meaningful participation in the settlement proceedings, the Court has sufficient facts before it to intelligently evaluate the settlement, and discovery would cause unnecessary delay. Accordingly, the Moore Group's request for discovery is DENIED.  Each individual request is discussed below in the context of provisional class certification or approval of the settlement.


## IV.    CERTIFICATION OF SETTLEMENT CLASSES

This Court must review the propriety of class certification under Fed. R. Civ. Pro. 23(a) and (b) in order to preliminarily approve a settlement under Fed. R. Civ. Pro. 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The Court "must pay 'undiluted, even heightened, attention' to class certification requirements...." *Id.* (citation omitted).

1    For settlement purposes, the Parties have proposed conditional certification of the

2  following settlement classes:

3       • For purposes of the injunctive and declaratory relief provided in the Settlement

4  Agreement, an injunctive-relief class certified under Federal Rules of Civil Procedure

5  23(a) and 23(b)(2) and consisting of:

6          All African-Americans and Latinos employed as Financial Advisors or
           Registered Financial Advisor Trainees in the Global Wealth Management
7          Group of Morgan Stanley & Co. Incorporated or its predecessor, Morgan
           Stanley DW Inc. at any time between October 12, 2002 and December 3, 2007.
8
         • For purposes of the monetary relief provided in the Settlement Agreement, a
9
   Settlement Class certified under Federal Rules of Civil Procedure 23(a) and 23(b)(3)
10
   and consisting of:
11
           All African Americans and Latinos employed as Financial Advisors or
12         Registered Financial Advisor Trainees in the Global Wealth Management
           Group of Morgan Stanley & Co. Incorporated or its predecessor, Morgan
13         Stanley DW Inc. at any time between October 12, 2002 and December 3, 2007,
           who do not timely opt out.
14
   The injunctive relief and monetary relief settlement classes allege claims for race and color
15
   discrimination under 42 U.S.C. § 1981.
16
         The Court hereby FINDS and CONCLUDES that these classes satisfy all the
17
   requirements for certification under Rule 23.
18
         **A.    Rule 23(a)**
19
         Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is
20
   impracticable."  The proposed classes of approximately 1200 Financial Advisors ("FAs")
21
   and Registered Financial Advisor Trainees ("FA trainees") is sufficiently numerous that
22
   joinder is impracticable.
23
         Rule 23(a)(2) requires that "there are questions of law or fact common to the class."
24
   Commonality focuses on the relationship of common facts and legal issues among class
25
   members, and has been construed permissively.  *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168,
26
   1177 (9th Cir. 2007), *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998).  Class
27
   members share common issues of fact and law regarding whether defendant Morgan
28

1  Stanley's policies and practices had an adverse impact on them and whether Morgan Stanley

2  violated 42 U.S.C. § 1981.

3      Rule 23(a)(3) requires that "the claims or defenses of the representative parties be

4  typical of the claims or defenses of the class."  The Court should consider whether the injury

5  allegedly suffered by the named plaintiff and the rest of the class "resulted from the same

6  allegedly discriminatory practice."  *Dukes*, 509 F.3d at 1184.  In its December 12, 2007

7  Order, the Court found that the claims of the named Plaintiff, Ms. Curtis-Bauer, are typical

8  because she was allegedly injured by the same discriminatory nationwide policies and

9  practices with respect to account distribution, business opportunities, and compensation as

10  other class members. *See* Second Amended Complaint ("SAC") ¶¶ 30-32 (alleging

11  discriminatory practices and policies).  The Court rejected the objection that Ms. Curtis-

12  Bauer's claims could not be typical of those of Latino FAs and FA Trainees, even if African-

13  American employees suffered greater harm from the same practices. *Cf. Dukes*, 509 F.3d at

14  1184 (claims typical even if some class members received different levels of pay or were

15  denied promotion at different rates because alleged discrimination stemmed from common

16  practice).

17      The Court expressed concerns, however, about whether Ms. Curtis-Bauer could be an

18  adequate representative under Rule 23(a)(4), which permits certification only if "the

19  representative parties will fairly and adequately protect the interests of the class."  This factor

20  requires the Court to inquire whether named plaintiffs and their counsel have any conflicts of

21  interest with other class members, and whether they will prosecute the action vigorously on

22  behalf of the class. *Hanlon,* 150 F.3d at 1020.[2]  Although the Court found that Ms. Curtis-

23  Bauer could adequately represent Latino FAs and FA trainees and Morgan Stanley

24  employees with other levels of production or tenure,  December 12, 2007 Order at 3-5, the

25  Court questioned 1) how it could evaluate whether Ms. Curtis-Bauer's interests were aligned

26  with those of the class when she was slated to receive a far greater payment in combined

27  incentive and non-class settlement awards than the average class member; and 2) how it

28

---

[2]  The Court has no doubt that Plaintiffs are represented by qualified and competent counsel.

could be assured that Ms. Curtis-Bauer has been and will be an adequate, engaged representative who can vigorously represent the interests of the class when she joined the litigation late in the settlement process. Order at 2-3. The Court invited additional briefing and submission of evidence relating to how it should judge Ms. Curtis-Bauer's adequacy as a representative under these conditions.

The additional briefing and submissions by the Parties provide information apart from the economic incentives created by the class and additional awards by which the Court can judge Ms. Curtis-Bauer's adequacy as a class representative, and show that her interests parallel those of the class.

### 1. Ms. Curtis-Bauer Can Vigorously Represent The Class Despite Her Late Involvement

Courts have found that even class representatives who join litigation after a settlement has been reached can adequately represent the class. *See, e.g., Olden v. LaFarge Corp.,* 472 F.Supp.2d 922, 937-39 (E.D.Mich. 2007), *citing* Moore's Federal Practice § 23.25[6] (court may substitute a new representative after class certification); *Heit v. Van Ochten,* 126 F.Supp.2d 487, 494 -495 (W.D.Mich. 2001)(relying on the assertion of Plaintiffs' counsel that substitute named plaintiff has requisite judgment and experience to represent class well in order to approve new class representative).

Plaintiffs argue that the Court may conclude Ms. Curtis-Bauer is an adequate representative where the settlement secured for the class members is fair, adequate, and reasonable:

> It is, ultimately, in the settlement terms that the class representatives' judgment and the adequacy of their representation is either vindicated or found wanting. If the terms themselves are fair, reasonable and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter equally comprised of conjecture and irrelevance.

*Hemphill v. San Diego Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 622 (S.D.Cal. 2005), *quoting In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir.1981). However, the Supreme Court teaches that the Court cannot look to the settlement itself to determine that Rule 23(a) and (b)'s requirements have been met – "whether a proposed class has sufficient

6

unity so that absent members can fairly be bound by decisions of class representatives."

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 619-622 (1997). But while the fact of or terms of the settlement cannot show commonality, typicality, or whether there are conflicting interests within the putative class, a good settlement can, logically speaking, show that the representative was engaged, informed, and able to represent others vigorously.

Both the fairness of the settlement, discussed more fully below, and Ms. Curtis-Bauer's supplemental declaration show that she is an "adequate" representative in this sense. Her declaration explains that she is serving as class representative primarily because she wants to effect systemic change at Morgan Stanley. Supplemental Declaration of Margaret Benay Curtis-Bauer ("Suppl. Curtis-Bauer Decl.") ¶ 10. Her first discussion with Plaintiffs' counsel about the case was in May, 2007. *Id.* ¶ 12. She was not presented with the settlement as a *fait accompli* before joining the suit; instead, she expressed interest in becoming a plaintiff, became a plaintiff, and then evaluated the proposed settlement. *Id.* ¶ 13. Her declaration shows that she was aware of her fiduciary duties to the class, felt capable of assessing the settlement and the approach of counsel, and found that approach appropriate to meeting the goals of the suit. *Id.* ¶¶ 10, 14. She suggested substantive changes which were ultimately incorporated into the settlement agreement. *Id.* ¶ 14.

### 2. Payments to Curtis-Bauer

The most problematic part of the request for certification and approval of the settlement remains the large payments to Ms. Curtis-Bauer. Ms. Curtis-Bauer will seek a $25,000 incentive payment for serving as the named Plaintiff, but the Court is not obliged to approve of the payment, and Ms. Curtis-Bauer states she will support the settlement whether or not she receives the incentive payment. Suppl. Curtis-Bauer Decl. ¶11. This payment is not before the Court at this time.

In addition, as a material part of the Settlement Agreement, *see* Settlement Agreement §§ III.C and V.D, Ms. Curtis-Bauer is to receive $125,000 for releasing her *non-class* claims.

The portion of Ms. Curtis-Bauer's declaration filed under seal shows that the non-class claims she is releasing are distinct from the class claims asserted in this action. She

7

1   alleges that she endured racial harassment, including being exposed to derogatory epithets,

2   during her employment. Although she complained about the offensive comments and

3   conduct, Morgan Stanley allegedly failed to respond and then terminated her.

4       These claims may well be time-barred.[3]  On the other hand, Morgan Stanley may have

5   determined it is in its interest to forego a statute of limitations defense and settle the claims

6   rather than defend against the suit and suffer adverse publicity stemming from allegations of

7   racial harassment.  But this Court is not called upon to determine the merit of Ms. Curtis-

8   Bauer's separate claims or the wisdom of the settlement.  Instead, it must determine whether

9   the settlement of her non-class claims renders Ms. Curtis-Bauer an inadequate class

10  representative (or makes the class settlement as a whole unfair).

11      Courts are traditionally concerned that plaintiffs who receive large incentives may be

12  "tempted to accept suboptimal settlements at the expense of the class members whose

13  interests they are appointed to guard," and become "more concerned with maximizing those

14  incentives than with judging the adequacy of the settlement as it applies to class members at

15  large." *Staton v. Boeing Co.,* 327 F.3d 938, 975, 977 (9th Cir. 2003).  Here, there is no

16  evidence that Ms. Curtis-Bauer did, in fact, fail to evaluate the settlement, sacrifice the

17  interests of absent class members to her own, or accept an unfair settlement.  As discussed

18  more fully below, the settlement meets the standards for preliminary approval under Fed. R.

19  Civ. Pro. 23(e).  The Court is swayed by the fact that the District Court for the District of

20  Columbia approved of a nearly identical settlement in *Augst-Johnson v. Morgan Stanley,*

21  United States District Court for the District of Columbia Case No. 06-1142, with a monetary

22  fund that provided a similar per-plaintiff award when controlled for length of service.  The

23  ─────────────────

24      [3]  A four-year statute of limitations applies to Ms. Curtis-Bauer's non-class claims (under 42
    U.S.C. § 1981, for contract claims in California, and for "unlawful" business practices under Cal.
25  Bus. & Prof. Code § 17200).  Ms. Curtis-Bauer was terminated from Morgan Stanley in November,
    2002, and the tolling agreement for class race claims in this case became effective only on January
26  23, 2007 (more than four years later).  Plaintiffs argue that they have "legitimate" arguments that
    Curtis-Bauer's individual claims are timely under tolling agreements between the *Objectors* and
27  Morgan Stanley, which tolled the Moore Group's individual and class race discrimination claims as
    of August 8, 2006, or, alternately, that Curtis-Bauer's individual claims "relate back" to the
28  amendment of this case in October, 2006  to include plaintiff Denise Williams's *individual* race
    claims.

fact that the relief agreed to here is so close to that approved in *Augst-Johnson* is persuasive evidence that Ms. Curtis-Bauer did not bargain away absent class members' claims in exchange for settlement of her non-class claims. While Ms. Curtis-Bauer may or may not have been able to settle her non-class claims without the class action, there is no evidence that she has benefitted *at the expense of the class*. The Court declines to reject her as a representative merely because Objectors perceive an appearance of impropriety where there is no evidence and only Objectors' speculation that any improprieties have taken place.

Nor are Objectors entitled to discovery about "the nature and precise timing of [her] involvement in this lawsuit and the settlement negotiations as well as the nature and settlement of her non-class claims" to support their speculation. Because there is no evidence of collusion between the parties during the settlement negotiations process, *see* December 12, 2007 Order at 6 n.2, Objectors are not entitled to discovery concerning settlement negotiations between the parties. *See In re Domestic Air Transp. Antitrust Litigation,* 144 F.R.D. 421, 424 (N.D.Ga.,1992), *citing Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir.1987). Moreover, Ms. Curtis-Bauer's supplemental declaration provides this Court with sufficient facts to determine that she is an engaged representative, that she has taken her duties as a class representative seriously, that she has released distinct non-class claims, and that her interests are aligned with those of the class.[4] Accordingly, at this juncture, the Court finds Ms. Curtis-Bauer is an adequate representative.

//

_____

[4]    Objectors are not entitled to view those portions of her declaration filed under seal. Plaintiff has identified her agreement regarding non-class claims made in connection with the settlement, as required by Fed. R. Civ. Pro. 23(e)(2), to the satisfaction of the Court.   As the Advisory Committee Notes to the 2003 Amendments to the Rule state, "[f]urther inquiry into the agreements identified by the parties should not become the occasion for discovery by the parties or objectors.... Some agreements may include information that merits protection against general disclosure." Here, the Court found good cause to allow the declaration describing Ms. Curtis-Bauer's allegations to be filed under seal because Morgan Stanley would suffer the loss of the confidentiality it bargained for if the allegations were made public. *See Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002)(courts have granted protective orders to protect confidential settlement agreements).

## B.     Rule 23(b)

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories in Rule 23(b).   Plaintiffs seek provisional certification under both Rule 23(b)(2) and (b)(3).

To be entitled to certification under Rule 23(b)(2), Plaintiffs must show that  "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief ... with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).  Civil rights cases alleging unlawful class-based discrimination are "prime examples" of such cases,  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997), which can include claims for monetary damages so long as such damages are not the "predominant" relief sought.  *Dukes*, 509 F.3d at 1186.  To certify a class under Rule 23(b)(2), the court must satisfy itself that:

> (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.

*Id.* (citations omitted).

This action clearly alleges that Morgan Stanley acted on grounds generally applicable to the class – specifically, that it had "nationwide account distribution policies and practices" (including nationwide use of the Power Ranking formula) and other practices and policies that denied or restricted availability of business opportunities, compensation, and other favorable employment conditions on the basis of race.  Second Amended Complaint, ¶¶ 27-33.  The parties have agreed upon extensive injunctive relief which reasonable plaintiffs would have brought suit to obtain.  Moreover, because Plaintiffs complain primarily of ongoing discriminatory practices, declaratory and injunctive relief would be necessary and appropriate were Plaintiffs to succeed.  Accordingly, the Court hereby CERTIFIES the injunctive-relief class under Rules 23(a) and 23(b)(2).

Certification of the monetary-relief Settlement Class described above is appropriate under Rule 23(b)(3) if the Court finds that common questions of law or fact predominate over questions affecting only individual members.  Here, common questions of law or fact

10

clearly predominate, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Because the Plaintiffs seek class certification for settlement purposes, the Court need not inquire whether the case, if tried, would present intractable management problems. *Amchem Products, Inc.*, 521 U.S. at 620. Accordingly, the Court CERTIFIES the monetary relief Settlement Class as set forth above, under Rules 23(a) and 23(b)(3).

## V.   APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

As set out above, the Court finds that Class Representative Margaret Benay Curtis-Bauer has claims typical of class members and is an adequate representative of class members. The Court appoints her to serve as Class Representative of both the injunctive relief and monetary relief classes.

The Court finds that Lieff, Cabraser, Heimann & Bernstein, LLP, Altshuler Berzon LLP, and Outten & Golden LLP, have, separately and collectively, extensive experience and expertise in prosecuting employment discrimination class action cases. The Court appoints these firms as Class Counsel for both the injunctive relief and monetary relief classes.

## VI.   PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

The Court has reviewed the terms of the [Proposed] Settlement Agreement attached as Exhibit 1, including specifically the injunctive relief provisions and the plan of allocation, and the description of the settlement in both Parties' briefs in support of preliminary approval. The Court has also read and considered the declarations, and, in some cases, supplemental declarations of plaintiff Curtis-Bauer, attorneys Kelly M. Dermody, Adam T. Klein, James M. Finberg, Mark S. Dichter, and Alexa B. Pappas, and industrial psychologists Kathleen K. Lundquist and Irwin L. Goldstein, and the report of mediator Hunter R. Hughes, in support of preliminary approval. The Court has also carefully considered the arguments of Objectors presented in their properly filed briefs and motions, specifically, in Docket Nos.

95, 129, and 152 and the declarations and other documents supporting them, and the arguments of both the Parties and Objectors at the hearing held December 3, 2007.

At the December 3, 2007 hearing and in its December 12, 2007 Order, the Court found that despite the Moore Group's suspicions, there was no evidence of collusion between the Parties during the settlement process. The settlement and Settlement Agreement are the result of extensive, arms' length negotiations between the Parties after Class Counsel investigated the class claims and became familiar with the strengths and weaknesses of Plaintiffs' case. The involvement of an experienced mediator in the settlement process and the submission of supplemental evidence concerning Plaintiffs' analysis of workforce data it received from Morgan Stanley confirm that the settlement was not collusive.

The Court's review of the materials listed above and its familiarity with the case lead it to conclude that the proposed Settlement Agreement[5] is within the range of possible settlement approval, such that notice to the Class is appropriate.

In its December 12th Order, the Court concluded that the settlement was not unfair because it included Latinos as well as African Americans. The Moore Group objectors now seek discovery of the workforce data Morgan Stanley provided to Plaintiffs' counsel, including human resources, payroll, account transfer, and team data. They again argue that they believe Latino and African-American financial advisors have had different experiences at Morgan-Stanley, stemming from different stereotypes, the existence of a Latino client base, and Objectors' understanding that Latinos are not excluded from teams to the same extent that African-Americans are. They claim that access to the workforce data will show the impact of these differences on tenure and attrition, inclusion in teams, and compensation.

As set out in this Court's December 12, 2007 Order, the core allegation of the Second Amended Complaint is that unitary practices and policies of distributing accounts (and, therefore, compensation and business and advancement opportunities) applied to African-

---

[5] The revised Settlement Agreement submitted by the parties contains typographical errors in the Table of Contents. The Parties are ordered to submit a revised Settlement Agreement with a Table of Contents that correctly reflects page numbers in the agreement within five court days of the date of this Order.

12

Americans and Latinos.  The Court is satisfied by the information provided in the

Supplemental Declaration of Adam T. Klein, filed under seal for *in camera* inspection,

that the disparities in compensation are not so great that it is unfair or inappropriate to treat

African-Americans and Latinos in a similar fashion for the purposes of monetary relief.[6]  To

the extent that African-American financial advisors earned less than their Latino

counterparts, that difference will be accounted for in part by the Earnings Regression

Component of the monetary relief, described in the § VIII.D.1 of the Settlement Agreement,

which will account for 15% of the monetary relief to each plaintiff. To the extent that

African-Americans experienced higher termination or attrition rates due to low production

caused by  discriminatory account distribution procedures, they will be able to seek

additional compensation through the Claim Form Survey component relating to termination.

Settlement Agreement § VIII.D.2.

     The settlement is not unfair, either overall or to African-Americans as a subgroup,

because it chooses to compensate class members primarily on the basis of their tenure at

Morgan Stanley during the class period.  Compensation shortfalls are susceptible of easy

calculation, and the complaint alleges that the shortfalls stem in part from nationwide use of a

formula with an adverse impact on class members.  Termination claims are far more difficult

to prove.  The Parties can reasonably choose to focus monetary relief on the strongest or

most easily proved portion of their claims as a means of compromising their claims.

Accordingly, Objectors are not entitled to discovery of workforce data to attack the fairness

of the settlement for African-Americans versus Latinos.

     The supplemental information contained the Declaration of Adam T. Klein and

supporting documents also satisfies this Court's concerns about how it could evaluate

monetary relief.   This declaration provides a basis for the Plaintiffs' claim at the preliminary

approval hearing that the $16,000,000 settlement fund represented approximately 43% of the

approximately $36,000,000 total observed race-based compensation disparities during the

---

[6]  This same information satisfies the Court that there is no disparity so great as to create a conflict of interest between the two groups, such that subclasses are necessary.

class period.  The estimate of the amount of compensation shortfalls does not capture emotional distress damages, or damages for terminations arising from low production or constructive terminations.  But again, Plaintiffs can reasonably choose to focus on pay disparities for FAs who are working at Morgan Stanley – disparities they allege stem from nationwide use of a certain formula – rather than on substantially more difficult termination claims.

This is not a case like *Acosta v. Trans Union, LLC,* 243 F.R.D. 377, 396 (C.D.Cal. 2007), where the court denied approval under Rule 23(e) because plaintiffs' counsel had acquired virtually no information from the defendants (other than a procedures manual so heavily redacted as to be "worthless"), failed to engage an expert until *after* the settlement had been reached, and had only a thin understanding of the factual basis for plaintiffs' claims, how the proposed settlement remedy would work, or cost to the defendants of the settlement.  *Id.*  Here, in contrast, the Plaintiffs have had access to extensive data, have had an economics professor analyze it as part of the settlement negotiation process, have extensive knowledge of Morgan Stanley's policies and practices and of the proposed injunctive relief gained from months of active involvement in the case,  and have negotiated a settlement fund that represents over 40% of the predicted disparity in compensation.  The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial.  Again, the issue is not whether the settlement "could be better," but whether it falls within the range of appropriate settlements.  *Hanlon,* 150 F.3d at 1027.  This settlement does so.  Accordingly, this Court will not grant Objectors discovery of workforce data, or order disclosure of the privileged work product in Mr. Klein's declaration filed under seal, so that Objectors can provide an alternative valuation of damages.

Next, in its December 12, 2007 Order, the Court concluded that the substantial injunctive relief provided by the settlement is an expansion, rather than a dilution, of the relief provided in the *Augst-Johnson* settlement, but expressed concerns about how to judge

the value of that relief. Morgan Stanley submitted further briefing on the injunctive relief and the supplemental declaration of Kathleen Lundquist, one of the industrial psychologists already appointed under the *Augst-Johnson* settlement to work on gender issues at Morgan Stanley, and slated to work on race issues under the proposed settlement here.

Lundquist explains that based on her extensive experience, she believes that the programmatic changes that Morgan Stanley will make as a result of the settlement and of her recommendations will improve productivity, retention, and hiring of minority financial advisors. Supp. Lundquist Decl. ¶ 8. She explains that even a conservative estimate of success in those areas will increase the collective compensation to African-American and Latino FAs and FA trainees by millions of dollars over the life of the settlement agreement. *Id.* ¶ 9. In addition, although nothing in the settlement obliges Morgan Stanley to follow the recommendations of the industrial psychologists, Dr. Lundquist states that based on Morgan Stanley's "stated commitment to bring about change" and the "enthusiastic feedback" she and Dr. Goldstein have already received as they start their work, she has "a high degree of confidence that our recommendations will be accepted by Morgan Stanley." *Id.* ¶ 7.

Next, Morgan Stanley's counsel has submitted a declaration stating that Morgan Stanley estimates it will spend $7.5 million on "diversity initiatives that are aimed squarely at class members in this case." Supp. Pappas Decl. ¶ 9.

The injunctive relief in this case seems comparable to that found to be substantive and meaningful in several other race discrimination cases. *See, e.g., Thomas v. Christopher,* 169 F.R.D. 224, 232-233 (D.D.C. 1996), *rev'd in part on other grounds, Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998)(programmatic relief in settlement of foreign service officers' race discrimination case, under which defendant would create a group to monitor and advance equal employment opportunities in the Department; hire an expert consultant to evaluate job requirements, revise and expand diversity training, appoint working group to review an awards nomination process, make efforts to include an African-American on certain selection panels, improve employment data collection, revise its affirmative action plan, and agree to allow for monitoring of compliance with settlement, provided "significant reforms");

15

*Plummer v. Chemical Bank,* 579 F.Supp. 1364, 1374 (D.C.N.Y.,1984)(accelerating affirmative action goals, implementing a dispute resolution procedure, and appointing a special master to hear complaints is significant injunctive relief in race discrimination case against bank); *Lurns v. Russell Corp,* 604 F.Supp. 1335, 1337 (D.C.Ala. 1984)(settlement that provides "backpay fund, scholarships, a minority vendor program, and substantially increased opportunities for hiring, training, transfer, and promotion," recruiting efforts, and hiring goals provides "broad and substantial benefits to class members").

Finally, this Court notes that in the *Augst-Johnson* case the district court for the District of Columbia approved of a *less* extensive version of the injunctive relief proposed here.

Together, all these factors convince the court that the programmatic relief set out in the Settlement Agreement is substantive, meaningful, and valuable to the class. Because the information cited above is sufficient for the Court to evaluate the proposed settlement, the Court will not allow Objectors to serve its proposed interrogatories about the adequacy of injunctive relief.[7]

Finally, the Court invited the Parties to correct the Settlement Agreement so that the formula for the Claim Form Component of class member compensation would correspond to the formula described in the proposed Class Notice. The Parties have done so.

The Court concludes that the proposed settlement is sufficiently "fair, adequate, and reasonable" viewed as a whole, such that preliminary approval of the settlement is warranted. *See Officers for Justice v. Civil Service Commission of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)("universally applied standard" is whether the settlement is "fundamentally fair, adequate, and reasonable").

//

---

[7] Nor will this Court require disclosure of the Power Ranking formula. The Power Ranking formula is already in place as part of the *Augst-Johnson* settlement; disclosure of the formula here will serve no purpose. Objectors are plainly not entitled to Plaintiffs' adverse impact analysis of the Power Ranking formula performed during settlement negotiations, which is their privileged work product.

Therefore, IT IS HEREBY ORDERED THAT:

1.     The [Proposed] Settlement Agreement (with the changes required in footnote 5, *supra*) and the settlement it embodies are hereby PRELIMINARILY APPROVED.  Final approval and entry of the Settlement Agreement is subject to the hearing of any objections of members of the Settlement Class to the proposed settlement embodied in the Settlement Agreement, other than objections by members of the Moore Group that this Court has already considered and ruled upon.

2.     Pending the determination of the fairness of the Settlement Agreement, all further litigation of this action is hereby STAYED.

## VII.   CONFIDENTIALITY

The Court hereby enjoins disclosure to third parties of the documents and information discussed or exchanged during the Parties' confidential settlement negotiations and mediation to any third party not specified in the Parties' confidentiality agreements.

## VIII.   OTHER CASES ENJOINED

Pending Final Approval, the Court hereby preliminarily enjoins each member of the Settlement Classes, including any member who makes an irrevocable election to exclude himself or herself from the monetary relief Settlement Class, from commencing, prosecuting or maintaining in any court other than this Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of this Court in connection with the Settlement Agreement.  The Court further enjoins any member of the Settlement Class who has not, by the deadline for opting out, made a timely, irrevocable election to exclude himself or herself from the monetary relief provisions of the Settlement Class from commencing, prosecuting or maintaining, either directly, representatively or in any other capacity, any claim that is subsumed within the Settlement Agreement.

17

## IX. APPROVAL OF THE FORM AND MANNER OF DISTRIBUTING CLASS NOTICE AND CLAIM FORM

The parties have also submitted for this Court's approval a proposed Class Notice, attached hereto as Exhibit 2, and a proposed Claim Form, attached hereto as Exhibit 3, which the Court has carefully reviewed. The Court finds and concludes as follows:

1.      The proposed Class Notice is the best notice practicable under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlement. The proposed plan for distributing the Class Notice and Claim Form, which are attached as exhibits to the Settlement Agreement, likewise is a reasonable method calculated to reach all members of the Class who would be bound by the Settlement. Under this plan, the Claims Administrator will distribute the Class Notice and Claim Form to Settlement Class Members by first class U.S. Mail to their last known addresses. There is no additional method of distribution that would be reasonably likely to notify Class Members who may not receive notice pursuant to the proposed distribution plan.

2.      The Class Notice fairly, plainly, accurately, and reasonably informs Class Members of: (1) appropriate information about the nature of this litigation, the settlement class, the identity of Class Counsel, and the essential terms of the Settlement Agreement, including injunctive relief and the plan of allocation; (2) appropriate information about Class Counsel's forthcoming application for attorneys' fees, the proposed service payments to Class Representative and other payments that will be deducted from the settlement fund; (3) appropriate information about how to participate in the Settlement; (4) appropriate information about this Court's procedures for final approval of the Settlement Agreement and Settlement, and about class members' right to appear through counsel if they desire; (5) appropriate information about how to challenge or opt-out of the Settlement, if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding this litigation, the Settlement Agreement.

3.      Similarly, the proposed Claim Form allows members of the Settlement Classes a full and fair opportunity to submit a claim for proceeds in connection with the Settlement.

Moreover, the Claim Form fairly, accurately, and reasonably informs Settlement Class Members that failure to complete and submit a Claim Form, in the manner and time specified, shall constitute a waiver of any right to obtain any share of the Settlement Payment.

4.     The Court finds and concludes that the proposed plan for distributing the Notice and Claim Form ("Notice Materials") will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due process requirements.

5.     Accordingly, the Court hereby ORDERS as follows:

A.     The form of the Notice Materials is approved.

B.     The manner of distributing the Notice Materials is approved.

C.     Promptly following the entry of this Order, the Claims Administrator shall prepare final versions of the Notice Materials, incorporating into the Notice the relevant dates and deadlines set forth in this Order.

D.     Within ten days following entry of this Order, Morgan Stanley shall provide the Claims Administrator with computer readable information, in a format acceptable to the Claims Administrator, that contains the full names, social security numbers, last known addresses, start dates and, as applicable, end dates of employment in Class positions with Morgan Stanley from October 12, 2002 to December 3, 2007.

E.     Prior to the mailing of the Notices, the Claims Administrator will update any new address information for potential class members as may be available through the National Change of Address ("NCOA") system.

F.     Within 20 days of the Preliminary Approval Date, the Claims Administrator shall mail, via first class postage, the Notice Materials to all known potential Settlement Class members at their last known address or at the most recent address that may have been obtained through the NCOA. The Claims Administrator will trace all returned undeliverable notices and re-mail to the most recent address available.

G.     The Claims Administrator shall take all reasonable steps to obtain

the correct address of any Class Members for whom the notice is returned by the post office as undeliverable. The Claims Administrator shall notify Class Counsel and counsel for Morgan Stanley of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s).

        H.     The Claims Administrator shall take all other actions in furtherance of claims administration as are specified in the Settlement Agreement.

## X.     PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT

### A.     Fairness Hearing

      The Court hereby schedules a hearing to determine whether to grant final certification of the Settlement Classes, and final approval of the Settlement Agreement (including the proposed plan of allocation, injunctive relief, payment of attorneys' fees and costs, and service payments to the Class Representative) (the "Fairness Hearing") **for June 16, 2008 at 10:00 a.m.** at the United States District Court for the Northern District of California, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, California.

### B.     Deadline to Request Exclusion from the Settlement

      1.     Class members may exclude themselves, or opt-out, of the monetary relief provisions of the class settlement. Any request for exclusion must be in the form of a written "opt-out" statement sent to Class Counsel and Counsel for Morgan Stanley. A person wishing to opt-out must sign a statement which includes the following language:

> I understand that I am requesting to be excluded from the class monetary settlement and that I will receive no money from the settlement fund created under the Settlement Agreement entered into by Morgan Stanley. I understand that if I am excluded from the class monetary settlement, I may bring a separate legal action seeking damages, but might receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case. I also understand that I may not seek exclusion from the class for injunctive relief and that I am bound by the injunctive provisions of the Settlement Agreement entered into by Morgan Stanley.

      2.     To be effective, this opt-out statement must be received by Class Counsel and

counsel for Morgan Stanley **on or before sixty one (61) days after the Notice is to be mailed to Class Members**, that is, by April 28, 2008. Only those class members who request exclusion in the time and manner set forth herein shall be excluded from the class for monetary relief purposes. Pursuant to Federal Rules of Civil Procedure 23(b)(3) and (c)(2), the terms and provisions of the Settlement Agreement concerning monetary relief shall have no binding effect on any person who makes a timely request for exclusion in the manner required by this Order.

      3.     Class Counsel shall file copies of all timely requests for exclusion, not timely rescinded, with the Court prior to the Fairness Hearing, redacting Social Security numbers and home addresses.

      4.     Class members shall be permitted to withdraw or rescind their opt-out statements by submitting a "rescission of opt-out" statement to the Class counsel and counsel for Morgan Stanley. The rescission of opt-out statement shall include the following language:

> I previously submitted an opt-out statement seeking exclusion from the class monetary settlement. I have reconsidered and wish to withdraw my opt-out statement. I understand that by rescinding my opt-out I may be eligible to receive an award from the claims settlement fund and may not bring a separate legal action against Morgan Stanley seeking damages with respect to the Released Claims.

A class member wishing to submit such a rescission statement shall sign and date the statement and cause it to be delivered to Class Counsel and counsel for Morgan Stanley no later than 75 days after the Notice is to be mailed to class members, that is, before May 12, 2008.

**C.**      **Defendant's Right to Rescind Agreement**

      If the number of individuals who opt out of the Settlement Class in the manner provided in this Order exceeds the number in Appendix 1 to the Settlement Agreement, Docket No. 100, filed in this Court under seal on November 15, 2007 (not including persons who have, before August 2, 2007, filed and served lawsuits, alleging race or color discrimination), Morgan Stanley, at its sole option, shall have the right to void the Settlement on the 30th day after the deadline for requests for exclusion. If Morgan Stanley exercises this option, all of Morgan Stanley's obligations under the Settlement Agreement shall cease

1    to be of any force and effect, and the Settlement Agreement and any orders entered in

2    connection therewith shall be vacated, rescinded, cancelled, and annulled, and the parties

3    shall return to the status quo in the Civil Action as if the parties had not entered into the

4    Settlement Agreement. In addition, in such event, the Settlement Agreement and all

5    negotiations, court orders, and proceedings related thereto shall be without prejudice to the

6    rights of any and all parties thereto, and evidence relating to the Settlement Agreement and

7    all negotiations shall not be admissible or discoverable in the Civil Action or otherwise.

8    **D.    Deadline for Filing Objections to Settlement and [Proposed] Settlement Agreement**

9

10    1.    Any Class Member who has not opted out of the monetary relief Settlement

11    Class and wishes to object to the fairness, reasonableness or adequacy of the Settlement

12    Agreement or the Settlement must do so in writing. Class Members who have timely

13    objected to the Settlement in writing may also appear at the Fairness Hearing. To be

14    considered, any objection to the final approval of the Settlement Agreement must state the

15    basis for the objection and be mailed to Class Counsel and Counsel for Morgan Stanley, at

16    the addresses provided in the Class Notice, via First Class United States mail, postage

17    prepaid, received no later than **sixty one (61) days after the Notice is to be mailed to Class Members, that is, by April 28, 2008.** An objector who wishes to appear at the Fairness

18    Hearing, either in person or through counsel hired by the objector, must state his or her

19    intention to do so at the time the objector submits his/her written objections. Objections

20    raised at the Fairness Hearing will be limited to those previously submitted in writing. Any

21    member of the class who does not timely file and serve such a written objection shall not be

22    permitted to raise such objection, except for good cause shown, and any member of the class

23    who fails to object in the manner prescribed herein shall be deemed to have waived, and shall

24    be foreclosed from raising, any such objection.

25    2.    Class Counsel shall file copies of all timely objections with the Court prior to

26    the Fairness Hearing, redacting Social Security numbers and home addresses.

27    //

28

22

**E.     Deadline for Submitting Claims Forms**

A Class Member who does not opt out will be eligible to a share of the settlement benefit. To receive this share, such a Class Member must properly and timely complete a Claim Form in accordance with the terms of the Settlement Agreement. To be effective, the Claim Form must be sent to the Claims Administrator at the address provided in the Class Notice postmarked no later than **86 days after the Notice is to be mailed to Class Members, that is, by May 23, 2008**. Failure to postmark a completed Claim Form by the Claim Filing Deadline shall bar the Settlement Class member from receiving any monetary award pursuant to the proposed Settlement Agreement. Absent a showing of good cause for late Claim Form, Settlement Class members who do not file timely and valid Claim Forms shall nonetheless be bound by the judgment and release in this action as set forth in the proposed Settlement Agreement, unless that Settlement Class member timely opts out of the Settlement.

It shall be the sole responsibility of each member of the Settlement Class who seeks a monetary award to notify the Claims Administrator if the class member changes his or her address. Failure of a Settlement Class member to keep the Claims Administrator apprised of his or her address may result in the claim being denied or forfeited.

**F.     Deadline for Submitting Motion Seeking Final Approval**

No later than 35 days before the Fairness Hearing, May 12, 2008, Plaintiff shall file a Motion for Final Approval of the Settlement and Settlement Agreement.   Any objections or responses to the Motion shall be filed no later than 20 days before the Fairness Hearing, by May 27, 2008.  On or before 13 days before the Fairness hearing, June 3, 2008, the Parties may file with the Court a reply brief responding to any filed objections.

**G.     Deadline for Petition for Attorneys Fees**

Class Counsel shall file with this Court their petition for an award of attorneys' fees and reimbursement of expenses no later than 35 days before the Fairness Hearing, May 12, 2008. Any objections or responses to the petition shall be filed no later than 20 days before the Fairness  Hearing, by May 27, 2008.   Class Counsel may file a reply to any opposition to

1  memorandum filed by any objector no later than 13 days before the Fairness hearing, June 3,

2  2008.

3  **H.  Deadline for Petition for Approval of Service Payments**

4  Class Counsel shall file with this Court their petition for an award of service payments

5  to the Class Representative no later than 35 days before the Fairness Hearing, May 12, 2008.

6  Any opposition or responses to the petition shall be filed no later than 20 days before the

7  Fairness  Hearing, by May 27, 2008.   Class Counsel may file a reply to any opposition to

8  memorandum filed by any objector no later than 13 days before the Fairness hearing, June 3,

9  2008.

10  **XI.  PLAINTIFF'S AND CLASS MEMBERS' RELEASE**

11  If, at the Fairness Hearing, this Court grants Final Approval to the Settlement and

12  Settlement Agreement, Named Plaintiff and each individual Settlement Class member who

13  does not timely opt out will release claims, as set forth in Settlement Agreement, by

14  operation of this Court's entry of the Judgment and Final Approval, regardless of whether he

15  or she submits a Claim Form or receives any share of the Settlement Fund.

16

17  **XII.  APPOINTMENT OF CLAIMS ADMINISTRATOR**

18  Settlement Services, Inc. of Tallahassee, Florida is hereby appointed Claims

19  Administrator to carry out the duties set forth in this Order and the Settlement Agreement.

20

21  **IT IS SO ORDERED.**

22

23  Dated: February 7, 2008 _____

24  THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

25

26

27

28