IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARGARET BENAY CURTIS-
BAUER, et al.,

                    Plaintiffs,

         v.

MORGAN STANLEY & CO., INC.,

                    Defendant.

NO. C 06-3903 TEH

ORDER GRANTING
RECONSIDERATION OF
COURT'S JULY 7, 2008 ORDER,
CONFIRMING FINAL CLASS
CERTIFICATION, AND
GRANTING FINAL APPROVAL
TO CLASS ACTION
SETTLEMENT

United States District Court
For the Northern District of California

        Plaintiffs move for reconsideration of this Court's July 7, 2008 Order, which declined

to grant final approval to the parties' settlement and instead referred this matter to a

Magistrate Judge for an evidentiary hearing.    For the reasons set out below, the Court grants

reconsideration, withdraws its July 7, 2008 Order, and grants final class certification and

approval of the settlement.


        The  relevant factual and procedural background are by now familiar. This action was

originally filed in June of 2006 as a Title VII gender discrimination class action against

Morgan Stanley.  A competing gender class action, *Augst-Johnson v. Morgan Stanley DW,
Inc.*, Case No. 06-C-01142 RWR, was filed in the United States District Court for the District

of Columbia on the same day.  In October, 2006, the Plaintiffs amended the Complaint,

adding named plaintiff Denise Williams, an African-American financial advisor at Morgan

Stanley who also asserted individual race claims.

In January, 2007, this Court stayed this action pending resolution of *Augst-Johnson*.

In February, 2007, the Augst-Johnson parties announced they had reached a settlement,

which the court preliminarily approved in July, 2007.

In the interim, the Plaintiffs had informed Morgan Stanley of their intent to add class

race discrimination claims to this action.  The parties began negotiating a possible settlement

of race claims.  On July 23, 2007, the parties reached agreement in principle on settlement.

On August 2, 2007, the Parties sought to file a Second Amended Complaint, adding Margaret

Benay Curtis-Bauer as a named plaintiff and asserting class discrimination claims on behalf

of a "minority" class of African-American and Latino current and former financial advisors

("FAs") and financial advisor trainees at Morgan Stanley.  They simultaneously announced

settlement of those claims.

In October, 2007, the Parties sought provisional class certification and preliminary

approval of the settlement.  The Court was aware that Ms. Williams was dissatisfied with the

settlement and planned to opt out, but found that Ms. Curtis-Bauer adequately represented

the plaintiffs, even though she had become involved late in the settlement process.  Order

Preliminarily Approving Class Action Settlement, filed February 7, 2008 ("2/7/08 Order"), at

5-9.

United States District Court
For the Northern District of California

Objectors opposed final approval of the settlement.  They submitted, for the first time, a declaration that Denise Williams, the sole African-American named Plaintiff in the suit until August, 2007, had never been involved in advising class counsel on Plaintiffs' class race discrimination claims.  Declaration of Denise Williams, Exh. A to Objector's Objections to Approval of Proposed Class Settlement, filed April 28, 2008.   As this Court observed, her declaration suggested that

> she had no opportunity to offer her "opinions and experiences" in negotiating settlement of the race claims. Id. ¶ 10.  She was never "invited to attend any mediation sessions or allowed to participate in the negotiations of the class settlement," id. ¶ 5, even though Plaintiffs' counsel were negotiating a settlement of race claims with Morgan Stanley from March, 2007 until they reached settlement in July, 2007.  At the time the settlement was announced to the Court on August 2, 2007, she was unaware of its terms, and was "furious" when she learned the details of the settlement.  Id.  ¶¶ 6-7.  She received the settlement documents only in October, 2007. Id. ¶ 9.  She says she was pressured to serve as a class representative.  Id. ¶ 12.  She rejected the settlement because she believed "the monetary relief was insufficient and that there was not any chance that the programs would fix the problems facing African-Americans at Morgan Stanley." ¶ 11.

Order of Reference, filed July 7, 2008, at 3.

The allegation that no named plaintiff had been involved in reaching the settlement raised serious due process and representation concerns for the Court.  Noting that there are limits to what actions and decisions class counsel can undertake on behalf of the class without involvement of a class member, the Court held that "there are some cases in which having a class representative's 'personal knowledge of the factual circumstances, and aid in rendering decisions' at crucial stages of the litigation is necessary to endure due process and adequate representation of absent class members." *Id.* at 11:17-20 (citation omitted).   The

United States District Court

For the Northern District of California

Court went on to set out a non-exclusive list of factors relevant to whether due process and representation requirements had been satisfied in a particular case,  id. at 12, and referred the case to a Magistrate Judge for an evidentiary hearing to explore whether, in light of those factors, there had been sufficient involvement by an adequate representative. *Id.* at 12-13.

On reconsideration, the Court concludes its Order was ill-advised.  The unfortunate and likely unique procedural history of this case (such as simultaneous expansion of the claims and settlement, and Ms. Curtis-Bauer's late involvement) had already raised hard questions extensively catalogued in this Court's earlier Orders.  Ms. Williams' declaration charged that fact-intensive employment discrimination class claims had been settled by Plaintiffs' attorneys alone -- before a class complaint had even been filed, let alone before a class had been certified.  The Court had to investigate whether the Objectors' allegation was true; as a practical matter, its factual exploration had to be guided by criteria for what could constitute adequate representation.  The Court was required to forge into largely uncharted doctrinal territory to articulate standards relevant in this unique situation – where claims had shifted, there had been successive named representatives, and there was no concern whatsoever that the plaintiffs' attorneys were sacrificing the interests of class members to their own.

The Court's analysis of what due process and representation requirements demand has proved unnecessary, however.  As set out more fully below, Plaintiffs have submitted evidence for *in camera review* which assures the Court that Ms. Williams was involved

4

litigation and settlement process.  Counsel spent many hours communicating with her.  Her involvement, and that of Ms. Curtis-Bauer, were adequate by any standard to satisfy representation and due process requirements.

Under these circumstances, the Court chooses to withdraw its Order rather than make law where none is needed.   The Court's Order of July 7, 2008 is hereby WITHDRAWN.

\*                \*                 \*

The Parties in this action have entered into a Settlement Agreement attached hereto as Exhibit 1.[1]   After the Court granted preliminary approval of the settlement and conditional class certification, the Court ordered that notice of the settlement, its terms, and applicable procedures be provided to class members.   All class members were given an opportunity to comment on the settlement at the final Fairness Hearing held on June 16, 2008.

The Court now grants final approval to the Settlement Agreement pursuant to Fed. R. of Civil Procedure 23(e).

This Court must review the propriety of class certification under Fed. R. Civ. Pro. 23(a) and (b) in order to preliminarily approve a settlement under Fed. R. Civ. Pro. 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  As set out in this Court's February 7, 2008 Order preliminarily approving the settlement, the proposed classes satisfy the

---

[1]   This Settlement Agreement ("SA") was revised during the pendency of the litigation and is the one submitted to this Court on June 13, 2008.

5

numerosity, commonality, and typicality requirements of Rule 23(a)(1), (2), and (3), and are appropriate for certification under Rules 23(b)(2) and (b)(3). *See* 2/7/08 Order at 4-5, 10-11. The Court also finds that the representation requirement of Rule 23(a)(4) has been met here. Margaret Benay Curtis-Bauer is an adequate representative. *See* 2/7/08 Order at 5-9. Moreover, Plaintiffs presented abundant evidence for *in camera* review to refute Ms. Williams' allegation that she was not involved in the litigation or settlement.  After reviewing the declarations of Plaintiffs' counsel, their time records, and other supporting evidence, the Court is satisfied that Plaintiffs' counsel interviewed Ms. Williams thoroughly about her experiences at Morgan Stanley, gaining knowledge that informed their ability to craft an appropriate settlement.   The Court is also convinced that counsel discussed settlement terms with Ms. Williams before even entering into settlement discussions. Ms. Williams was kept informed of and consulted about the settlement process; even though the parties contradict each other about her evolving reaction to the settlement terms.  Even though Ms. Williams ultimately rejected the settlement and her relationship with class counsel broke down, the extent of her involvement was sufficient, particularly given the subsequent review and approval of the settlement by Ms. Curtis-Bauer.

Fed.R.Civ.P. 23(e) also requires the district court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. *Staton,* 327 F.3d at 959, *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In making this determination, the court may consider any or all of the following factors, if applicable:

United States District Court

For the Northern District of California

the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D.Cal. 2004), *citing Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)(same).  This list is not intended to be exhaustive; the court must consider the applicable factors in the context of the case at hand. *See Officers for Justice,* 688 F.2d at 625.[2]  In some cases, one factor alone may prove determinative in finding sufficient grounds for court approval. *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Where, as here, the parties agree to settle the dispute prior to certification of the class, the court must be particularly vigilant in its scrutiny of the settlement. *Hanlon*, 150 F.3d at 1026.   Yet despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.  *See, e.g., Officers for Justice*, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation

---

[2] Another list of factors, for example, recently endorsed in *In re Lupron Marketing and Sales Practices Litigation,* 228 F.R.D. 75, 93 (D.Mass. 2005) comes originally from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989). The *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation ....").

These factors show that the settlement is fair, adequate and reasonable.

The Plaintiffs would face considerable risks were they to proceed to trial. Their action alleges that Morgan Stanley's nationwide account distribution policies and practices and other policies and practices denied or restricted the availability of business opportunities, compensation, and other favorable employment conditions on the basis of race. *See* Second Amended Complaint, filed August 17, 2007, ¶¶ 2, 5, 37-32. Plaintiffs would likely face a vigorous defense, and difficulties proving that Morgan Stanley's objectively neutral policies and procedures caused the disparities in compensation and other harm, such as terminations based on low production. The uncertainty and complexity of proceeding to trial would be substantial. Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.

The settlement was reached after extensive investigation, analysis, and arm's-length negotiation. *See* Order, filed December 12, 2007, at 6 n.2, 2/7/08 Order at 12. The Court finds that collectively, Plaintiffs' counsel have extensive expertise and experience not only with class action discrimination cases, but in litigating employment and discrimination cases against defendants in the financial services industry, including Morgan Stanley. Their thoughtful assessment of the terms of the settlement – particularly their considered and strong support for the efficacy of the proposed injunctive relief  –  weighs in favor of approval. *See, e.g.,* Reporter's Transcript of Preliminary Fairness Hearing ("RT PFH"),

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

November 3, 2007, at 11-17, 67-70, and Reporter's Transcript of Final Fairness Hearing

("RT FFH"), June 16, 2008, at 73-75.  Moreover, as the Court observed on preliminary

approval of the settlement, they arrived at the terms of the settlement after months of active

involvement in the case, and after receiving and analyzing compensation data extracted from

Morgan Stanley's human resources database, 2/7/08 Order at 14, and with the involvement

and advice of class representatives.  *See discussion, supra,* and 2/7/08 Order at 7.

The reaction of the class members also weighs in favor of approval.  Of the over 1,300

class members, nine have chosen to remain class members but lodge objections, and only 24

have opted out.   By the close of the claim period, 422 class members had submitted claims, a

participation rate of approximately 31%.[3]  Plaintiffs submitted numerous letters and

declarations in support of the settlement, both from African-American and Latino class

members as well.   *See* Letters of Nathan Lewis, Anthony Baker, Beverly Bishop, Steve

Cota, and Eric Berry, Exhs A, B, F, I, and J to Declaration of Heather Wong, filed November

19, 2007, and Declarations of Daniel Correa, Erick Ibarra, Christian Iglecias, Edward

Jiminez, Mark Morales, and Stanley Sykes, filed July 23, 2008.

Most important, however, are the strength of the injunctive and monetary relief the

Settlement provides.  This Court has already found, on preliminary approval of the

settlement, that the Settlement Agreement provides substantial injunctive relief to the

Plaintiff class. 2/7/08 Order at 14-16.  The relief represents an expansion of the relief

---

[3]  At the Preliminary Fairness Hearing, Objectors' counsel called the 31% participation rate in a discrimination case against Merrill Lynch, *Cremin v. Merrill Lynch*, United States District Court for the Northern District of Illinois Case No. 96-C 3773 ("*Cremin*") "a very high percentage in our view."  RT PFH at 59.

United States District Court

For the Northern District of California

provided in the settlement of a parallel gender discrimination case against Morgan Stanley, *Augst-Johnson, supra,* and is substantive, meaningful, and valuable to the class. 2/7/08 Order at 14-16. The Court will not revisit its analysis here.

Objectors' arguments to the contrary are unavailing.  They argue that the Settlement is inadequate because it does not include Court supervision or actually require Morgan Stanley to remedy racial disparities in compensation, retention, hiring, teaming or promotion by setting goals and timetables for decreasing those disparities (Objections No. 1 and 2).  But the Parties explained at the Preliminary Fairness Hearing that goals and timetables can backfire, because employers quickly hire minorities to meet goals, and then they "just fall out of the system again."  RT PFH at 68, 80.  Instead, the parties have chosen to stress programmatic change and diversity and inclusion programs that will encourage managers to attract and retain individuals who are likely to succeed.  *Id.*[4]  The Settlement provides ongoing monitoring, analysis, and review by an independent Diversity Monitor who will report to both Morgan Stanley and class counsel.  Monitoring will allow Plaintiffs' counsel to track the effectiveness of the Settlement, and provide data which Plaintiffs can use to enforce the general nondiscrimination provision of the Settlement Agreement.  SA § VII.H (African

---

[4]  The Court also rejects Objectors' unsupported claim that the industrial psychologist chosen to study race issues and make proposals, Kathleen Lundquist, is inappropriate because she has been a defense expert on numerous occasions.  Although Objectors state that Lundquist was a defense expert in "*McReynolds v. Sodexho,*" (no citation) referred to in a web article, and *Employees Committed For Justice v. Eastman Kodak Co.,* 407 F.Supp.2d 423 (W.D.N.Y. 2005), a case where the EEOC found rampant discrimination, Objections, filed April 28, 2008, at 10-11,  neither source mentions Lundquist.  Objectors state she was a defense expert "supporting employer's policies and culture" in *Employees Committed for Justice* and  "*Puffer v. Allstate*, Case No. 04-5764 (N.D. Ill),"  *id.,*  without proffering a declaration, document, or even docket number of a filing in support.  Lundquist declares that she was *not* a defense expert in *McReynolds,* testified about limited matters in *Employees Committed for Justice*, and did not testify about company culture in *Puffer.*  Lundquist Declaration, filed June 3, 2008; *see also* RT  FFH at 38-39.

American and Latino financial advisors and trainees "will enjoy terms and conditions of employment comparable to" those of their white counterparts);  RT FFH at 72-73. Particularly where Plaintiffs' counsel can turn to the Court to enforce the nondiscrimination provision, the absence of Court monitoring does not render the settlement inadequate.[5]

Objectors' also argue that the Settlement Agreement improperly strips the Court of jurisdiction, forces the parties into confidential, binding arbitration, and unfairly precludes "third parties" other than class counsel –  including class members – from enforcing the terms of the Settlement Agreement.  (Objections Nos. 1 and 13).  The parties revised the Settlement Agreement to reflect their shared understanding that although disputes about the settlement initially go to arbitration, the Court retains jurisdiction to review the arbitrator's decisions.  SA § X at 47.  No other claims are precluded or forced into arbitration by the Settlement Agreement.  Finally, the provision limiting enforcement of the Settlement Agreement to class counsel is not unusual; in fact, the settlements that Stowell and Friedman negotiated in two financial services discrimination cases, *Martens, supra*, and *Cremin*, *supra*, contain the same limitation.  *See* Supplemental Declaration of Mark S. Dichter, filed June 3, 2008, Exh. A and B (settlement agreements).

---

[5]   The Court notes that although Objectors argue reporting and monitoring are crucial, neither the *Cremin* settlement nor that negotiated by Objectors' counsel in  *Martens v. Smith Barney,* United States District Court for the Southern District of New York Case No. 96 Civ. 3779 ("*Martens*") require reporting to or monitoring by the court. See Supplemental Declaration of Mark S. Dichter, filed June 3, 2008, Exh. A and B (settlement agreements).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Objectors next argue that because the Power Ranking[6] system rewards those who already have bigger books of business as a result of discrimination, it perpetuates and institutionalizes existing bias (Objection No. 4).  The Power Ranking formula is already in place as part of the *Augst-Johnson* settlement.  As a result of concerns raised by counsel for the Plaintiffs in this action, Morgan Stanley changed the Power Ranking formula to de-emphasize past performance, tested the revised Power Ranking formula to see if it would have an adverse impact on minorities, and found that it did not.  Declaration of Mark Dichter, filed November 19, 2007, ¶ 19; RT PFH at 65.  Moreover, the Settlement Agreement provides for annual review of the Power Ranking formula so that it can be adjusted if the revised version turns out to have a disparate impact.  SA § VII.D.2.d, at 22-23; RT FFH at 31-32.

Objectors also contend the Settlement will not bring about meaningful change because it allows minorities to be excluded from teams and partnerships.  There is no real dispute that partnerships provide important financial benefits for their members.  When a member of the partnership or team leaves Morgan Stanley, that member's accounts pass to other members; moreover, brokers get credit in the Power Ranking system (and therefore the ability to get even more business) for assets they accrue as part of partnerships.  Although the Settlement provides that the Industrial Psychologists will try to increase minority representation in

---

[6] The Power Ranking formula is the algorithm used to distribute accounts to financial advisors.

12

partnerships, SA § VII.D.4 and 5, at 25, it continues to allow financial advisors to transfer assets and accrue credit through partnerships and teams.  SA § VII.D.5, 5.c, at 25.

Objectors contend that the policy creates an end-run around any transparent, equitable account distribution system (Objection No. 5).  They contend that African-American FAs are routinely excluded from teams, and because teams are either formed with the express approval of management or the direct involvement of managers, Morgan Stanley's "policy of allowing established financial advisors to choose partners for lucrative agreements" should have been treated as an employment practice and addressed in the Settlement.  Class counsel, relying on explanations from counsel for Morgan Stanley, apparently concluded that team formation was a practice of individual brokers beyond the reach of this lawsuit.  *See* RT PFH at 69, 73 (Plaintiffs' counsel James Finberg); 81 (Morgan Stanley counsel Mark Dichter).

Even if the exclusion of minorities from teams and partnerships were attributable to Morgan Stanley, the fact that the Settlement Agreement still allows assets to transfer and credits to accrue through partnership is not fatal to the settlement.  Again, the standard is not whether the settlement "could be better," but whether it is fair, reasonable, and adequate. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).   The Settlement Agreement provides for some efforts to increase minority representation on teams and partnerships. Given the extensive programmatic and monetary relief the settlement provides to class members, the Parties' decision to focus on other issues is acceptable.

The monetary relief provided by the settlement is also fair, adequate, and reasonable. As set out in the Court's Order preliminarily approving the settlement,  the monetary relief

represents over 40% of the predicted disparity in compensation which Plaintiffs sought as damages.  2/7/08 Order at 13-14.   The Settlement Agreement provides for a fund of approximately $16,000,000, approximately $14,000,000 of which is to be distributed to claiming class members – a per class member average of approximately $12,000.   The monetary relief is comparable to that approved by the District Court for the District of Columbia in settlement of the parallel *Augst-Johnson* case, which called for distribution of approximately $32 million of a $46 million monetary fund to claimants in a class of over 2,800 people (a per capita average of less than $12,000).  *See* Declaration of James M. Finberg in Support of Reply Memorandum, filed November 19, 2007, Exh. A  *Augst-Johnson* Second Revised Settlement Agreement ("*Augst-Johnson* SRSA"); Exh. C (October 26, 2007 Order finally approving *Augst-Johnson* settlement); *see also Augst-Johnson*, Docket No. 33-3, Declaration of Cyrus Mehri In Support of Joint Motion for Final Approval of Class Action Settlement, filed October 1, 2007, at ¶ 34 ($32 million of fund goes to class)).   The Court also takes judicial notice of the settlement in another parallel gender discrimination case against brokerage firm Smith Barney, *Amochaev et al. v. Citigroup Global Markets Inc.,* United States District Court for the Northern District of California Case No. C-05-1298-PJH. The district court recently found that the settlement agreement there, which provided similar injunctive relief and a monetary fund of approximately $25 million to a class of approximately 2,400 plaintiffs, was fair, adequate, and reasonable.  *See Id.*, Docket Nos. 194, filed August 13, 2008 (final approval) and 186, filed July 24, 2008 (memorandum in support of final approval).

14

United States District Court

For the Northern District of California

1    Objectors again argue that the monetary relief is inadequate, both in absolute terms,

2  and to the extent that it compensates Plaintiffs for "compensation shortfall" alone, rather than

3  all  recoverable damages (such as emotional distress, punitive damages, front pay, fringe

4  benefits, and damages stemming from termination or constructive termination).  (Objections

5  7, 8 and 12).  The Court has already rejected these arguments.  *See* 2/7/08 Order at 12-14.

6  Again, the settlement is not unfair, either overall or to African-Americans as a subgroup,

7

8  because it chooses to compensate class members primarily on the basis of their tenure at

9  Morgan Stanley during the class period, with added compensation for termination.

10  Compensation shortfalls can be readily calculated, and the Parties can choose to have

11

12  monetary relief focus on pay disparities rather than on constructive or actual terminations as

13  a means of compromising a complex set of claims.  *Id.*

14

15    Objectors again argue that African-American and Latino class members should be

16  represented by different subclasses and should not receive compensation according to a

17

18  common formula.  (Objection 11).  The Court rejected the argument that a single class was

19  inappropriate in its December 12, 2007 Order, finding that the central discriminatory practice

20  at issue (account distribution) affected both groups in the same way, and there was no

21

22  obvious conflict between the two.  *Id.* at 4-5.  After *in camera* inspection of data provided by

23  Plaintiffs, the Court also concluded that the differences in compensation were not so great

24  that compensating African Americans and Latinos according to the same formula was unfair.

25

26  2/7/08 Order at 13-14.

27

28

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Next, Objectors contend the monetary compensation is inadequate in light of the Supreme Court's decision in *Ledbetter v. Goodyear Tire*, __U.S.__, 127 S.Ct. 2162 (2007). (Objection 15).  They argue that now, Morgan Stanley will argue that class members are releasing all discrimination claims that arose during the class period, even if that discrimination results in lower wages in the future.

But *Ledbetter*, which came down while the parties were negotiating the settlement, actually makes the settlement *more* favorable.  The Settlement Agreement gives class members approximately 43% of the calculated "compensation shortfall" between minority FAs and white FAs.  Even assuming that the entire disparity in compensation is due to discriminatory acts such as discriminatory account distribution (a fact that has not been proven), many of those acts likely took place outside of the limitations period.[7]  After *Ledbetter*, complaints about compensation disparities that stem from acts outside the limitations period are no longer actionable.  So, in effect, the settlement is likely greater than 43% of the *recoverable* compensation shortfall.  Plaintiffs will release claims for any discriminatory conditions occurring during the class period, but that is the nature of any release.  Moreover, the injunctive relief (including changes to the account distribution formula) will mitigate any future harm stemming from discrimination during the class period.

---

[7]  Objectors argued that account distribution and access to resources early in a financial advisor's career can make an enormous difference in later compensation, as the FA's book of business grows exponentially through referrals and asset growth.  *See*, e.g., RT PFH at 42, 46-47 (testimony of Marian Tucker).

16

United States District Court

For the Northern District of California

1    The remaining objections to the settlement as a whole have no merit.[8]   Objectors

2 argue that class members have been denied the opportunity to review key components of the

3 settlement because the proposed  Account Distribution Policy and Power Ranking formula

4 have been filed under seal in this case. (Objection No. 3).  The formula was filed under seal

5 because the parties agreed it was confidential, proprietary business information.  *See*

6 10/24/07 Motion to File Under Seal.  The Power Ranking was reformulated as part of the

7 *Augst-Johnson* case;  Plaintiffs' counsel were already negotiating with Morgan Stanley while

8 that case was being settled, and they were able to suggest changes to the formula so that it

9 would not adversely affect minority FAs.

10    Like the Settlement Agreement in this action, the *Augst-Johnson* settlement, approved

11 in October, 2007 required Morgan Stanley to provide each Financial Advisor with "the

12 methodology for calculating the Power Rankings... including the name of each factor, an

13 explanation of each factor, and how each factor is weighted" and to "inform each Financial

14 Advisor of her or his individual ranking at the time any distribution is made," along with

15 information about the actual distribution of each account, and the number of accounts and

16 assets distributed to each ranked Financial Advisor.  *Augst Johnson* SRSA at 21, § VII.C.2.b

17 and c.  As of late April, 2008, the Account Distribution Policy and Power Ranking System

18 have been available to all current Morgan Stanley employees.  RT FFH at 39-42.  Although

19 Objectors argue that the policy was disclosed too late to allow the Plaintiffs here to evaluate

---

[8]    The Court further finds that objections raised by class member Billy Manning and Marilyn White raise arguments that have already been considered and rejected by this Court.

the settlement, they offered no additional arguments based on the formula that could show that class members were prejudiced.

Objectors next argue generally that they – as African American FAs with a broad range of experiences with Morgan Stanley – would have been "more empathetic to the plight" of African-American class members and crafted a settlement more sensitive to their day-to-day experience.  (Objection No. 6).  This Court has found, however, that class members were appropriately and adequately represented, and that Plaintiffs' counsel received input and advice about conditions of employment at Morgan Stanley throughout the settlement negotiations.

Objectors next contend that the settlement improperly requires class members to release claims for which they are not being compensated, including  termination and promotion claims.  (Objection No. 9).  But the settlement does give additional monetary relief to class members who were terminated or suffered extraordinary emotional distress. SA § VIII.D.2 at 39.  Moreover, class members release only termination, promotion, constructive discharge and harassment claims "arising from" "low production, failure to satisfy position requirements, failure to satisfy requirements of the training program, production related reductions in force, or other production based performance related terminations." *Id.* § V.A at 15.  They do not, for example, release harassment claims arising from use of racial epithets.  RT PFH at 20.  The *Augst-Johnson* court approved a settlement in which the plaintiffs released *all* termination and sexual harassment claims.  *Augst-Johnson* SRSA at 15, § V.A.  The release is not overly broad.

18

Objectors reassert their argument that payments to named representative Ms. Curtis-Bauer in settlement of her individual claims and as an incentive payment are improper. (Objection No. 10).  The Court previously rejected this argument, 2/7/08 Order at 5-6, 8-9, and will not revisit it here.

Finally, Objectors argue that notice to class members was flawed and inadequate because the web site listed in the notice malfunctioned and class members were not explicitly informed about the Moore Group Objectors and their arguments against settlement. (Objection No. 14).  Notice was adequate.    Notice was sent to class members in accordance with this Court's orders, and access to the web site is not required to make notice adequate. In any case, although the "racecaseagainstmorganstanley.com" website, to which the notice referred, was not active until near the end of the claim period, counsel for Plaintiffs explained that a website was set up under a similar name ("morganstanleyracesettlement") and that website was accessed even more times than the site listed in the notice.  FFH at 76-78. Moreover, approximately 33% of the class responded in some way to the notice, and approximately 31% filed claims – a rate that even Objectors' counsel considers "very high." RT PFH at 59.

In sum, the Court finds that the settlement is fair, adequate, and reasonable under the criteria set out in *Officers for Justice,* 688 F.2d at 625.

United States District Court

For the Northern District of California

1  THEREFORE, IT IS HEREBY ORDERED, on consideration of the Settlement

2  Agreement attached hereto as Exhibit 1, the briefs, declarations, and oral arguments in

3  support thereof,  the submissions of the Objectors, evidence and argument submitted to the

4  Court for *in camera* review, and the proceedings in this action to date,

5  1.  Except as otherwise specified herein, the Court for the purposes of this Order

6  adopts all defined terms set forth in the Settlement Agreement, attached hereto as Exhibit 1.

7  2.  This Court has jurisdiction over the subject matter of this litigation and all

8  matters relating thereto, and over the Representative Plaintiff and the Defendant.

9  3.  The Court confirms as final its conditional certification for the purposes of

10  settlement of the injunctive-relief Settlement Class defined in the Settlement Agreement and

11  in Section IV of the Court's February 7, 2008 Order as "All African Americans and Latinos

12  employed as Financial Advisors or Registered Financial Advisor Trainees in the Global

13  Wealth Management Group of Morgan Stanley & Co. Incorporated or its predecessor at any

14  time between October 12, 2002 and December 3, 2007" and the monetary relief Settlement

15  Class consisting of "All African Americans and Latinos employed as Financial Advisors or

16  Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan

17  Stanley & Co. Incorporated or its predecessor at any time between October 12, 2002 and

18  December 3, 2007 who did not timely opt out."

19  4.  At their request, twenty-four (24) Class Members initially opted out of the

20

21

22

23

24

25

26

27

28

20

monetary settlement class[9] and one (1) has since rescinded his opt-out.   The Parties

acknowledged at the final fairness hearing that an additional class member opted out on the

last day of the opt-out period.  RT FFH at 10-11. Therefore twenty-four (24) Class Members

have been permitted to opt-out of the monetary settlement class without releasing any of their

monetary claims. They are listed on Appendix A to this Order.

5.      The Court confirms as final the appointment of Margaret Benay Curtis-Bauer

as class representative as stated in Section V of the February 7, 2008 Order.

6.      The Court confirms as final the appointment of the following as Class

Counsel: Lieff, Cabraser, Heimann & Bernstein, LLP; Outten & Golden, LLP; and Altshuler

Berzon LLP.

7.      The distribution of the Class Notice and Claim Form to Class members by

mail delivery, pursuant to this Court's orders, constituted the best notice practicable under

the circumstances, were accomplished in all material respects, and fully met the requirements

of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States

Constitution and any other applicable law.

8.      Notice was sent on February 26, 2008 to the United States Attorney

General and the Attorneys General of all 50 states and the District of Columbia pursuant to

the Class Action Fairness Act.  No objections were received from any federal or state

officials.

---

[9]  An additional opt-out was submitted, but Morgan Stanley's employment records
establish that, although he was employed by Morgan Stanley, he was neither a Registered
Financial Advisor Trainee nor Financial Advisor. Thus, he is not a Class Member and his
opt-out is immaterial.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

9.     Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Court grants final approval to the Settlement Agreement attached hereto as Exhibit 1 and to the terms of the settlement set forth therein.   The Court finds that the Settlement Agreement is fair, reasonable, and adequate in all respects.   The Court finds that the Settlement Agreement, revised after Court review and a hearing on December 3, 2007, was the culmination of more than a year of ongoing discussions and negotiations between the parties. This Court also finds that the Settlement Agreement is the result of arms-length negotiations between experienced counsel representing the interests of the Plaintiff and Defendant, after thorough factual and legal investigation, with the assistance of an experienced, professional mediator. *Staton,* 327 F.3d at 960; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,1291 (9th Cir. 1992).   The Court specifically finds that the settlement is rationally related to the strength of Plaintiff's and Class members' claims given the risk, expense, complexity, and duration of further litigation.   The mechanisms and procedures set forth in the Settlement Agreement by which payments are to be calculated and made to class members filing timely claims are fair, reasonable and adequate.   Individual Class Members' monetary awards shall be determined in accord with the procedures set forth in the Settlement Agreement.

10.     By operation of this Order and the Final Judgment, all released Class member and named Plaintiff claims are fully, finally and forever released, relinquished and discharged, pursuant to the terms of the Settlement Agreement, as to all monetary-relief Settlement Class members other than those listed in Appendix A hereto, who timely opted out pursuant to the terms of the Court's February 7, 2008 Order and the Settlement

**United States District Court**

For the Northern District of California

Agreement. The Court has reviewed the release provisions in the Settlement Agreement, and the Court finds the releases to be fair, reasonable, and enforceable under applicable law. Each member of the Settlement Class, including any member who makes an irrevocable election to exclude himself or herself from the monetary relief Settlement Class, is hereby enjoined from commencing, prosecuting or maintaining in any Court other than this Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of this Court in connection with the Settlement Agreement. The Court further enjoins all members of this Settlement Class except those listed in Appendix A, who have timely opted out of the monetary-relief Settlement Class, from commencing, prosecuting or maintaining, either directly, representatively or in any other capacity, any claim that is subsumed within the Settlement Agreement and from asserting any and all class and other claims that were released pursuant to the Settlement Agreement.

11.     The Settlement Agreement attached hereto as Exhibit 1 is hereby approved and incorporated herein and shall become effective according to its terms. The allocation plan for individual Class Members' monetary awards procedures as set forth in the Settlement Agreement is approved.

12.     The Second Amended Complaint shall automatically be dismissed with prejudice ten business days after the Effective Date, as that term is defined in the Settlement Agreement, except that the Court shall retain continuing jurisdiction, pursuant to the terms of the Settlement Agreement.

13.     Neither the Settlement Agreement, nor this Order, nor the certification of

United States District Court

For the Northern District of California

the Class, nor any communication or action by the parties in connection with the Settlement

constitutes or shall be deemed to constitute an admission by Morgan Stanley of any liability

or wrongdoing whatsoever, or to constitute a finding by this Court as to the merits of any

claim or defense asserted or that could have been asserted in this action, or as to any

wrongdoing by Morgan Stanley. Neither the Settlement Agreement nor this Order is or shall

be used or deemed to be an admission in any action or proceeding of any fault, liability or

wrongdoing by any person or entity; and neither the Settlement Agreement, nor any

negotiations or proceedings related thereto, nor this Order, nor any related document or

communication, shall be offered or received in evidence against any person or entity in any

action or proceeding as an admission, concession, presumption or inference as to the merits

of any claim or defense; however, the Settlement Agreement or this Order may be received in

evidence in any proceeding in this Court as may be necessary to consummate or enforce the

Settlement Agreement or this Order.

        14.    The Court hereby enjoins disclosure to third parties of the documents and

information discussed or exchanged during the parties' confidential settlement negotiations

and mediation to any third party not specified in the Parties' confidentiality agreements.

//

//

//

//

1    15.    The Court retains jurisdiction over this matter, pursuant to the terms of the

2  Settlement Agreement.

**IT IS SO ORDERED.**

Dated: October 22, 2008    _____
                            THELTON E. HENDERSON, JUDGE
                            UNITED STATES DISTRICT COURT

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Appendix A
### Timely Opt-Out Requests

| Last Name | First Name |
|-----------|------------|
| Rivera Cruz | Juan Luis |
| Tucker | Marion J |
| Roy | Brian Keith |
| Moore | Ronald Eugene |
| Mcdowell | Carlton Thomas |
| Mabon | Maurice Gene |
| Lewers | Mark |
| Grant | Janice |
| Evans | Lanta Larnett |
| Carter | Patrick Eugene |
| Bell | Anthony T |
| Barnett | Michael Leon |
| Allen Jr. | Morris |
| Owens | James Dewitt |
| Stalling | Hubert |
| Howard | Jacqueline D |
| Montes | Joseph F. |
| Gordillo | Oscar Jose |
| Williams | Denise Lavern |
| Lowell | Carlos |
| Nyamuswa | Sarah Sarayi |
| Cyrus | Theron |
| Dixon | Martin |
| Griffin | Vincent |

### Rescinded Opt-Out Request
John Peter Greer, III